**T. Farrar PATTERSON, Appellant,**

v.

**SOUTHWESTERN BAPTIST THEOLOGICAL SEMINARY, Appellee.**

No. 2–92–244–CV.

Court of Appeals of Texas, Fort Worth.

July 14, 1993.

Rehearing Overruled Aug. 24, 1993.

G. William Baab, Irving, for appellant.

Harris, Finley & Bogle, P.C., Roland K. Johnson, Andrew D. Sims, and Russell R. Barton, Fort Worth, for appellee.

Before HILL, C.J., and FARRIS and DAY, JJ.

## OPINION

FARRIS, Justice.

T. Farrar Patterson (Patterson), appeals a summary judgment denying him recovery in his wrongful termination suit against Southwestern Baptist Theological Seminary (Seminary). The trial court granted summary judgment on the ground that under the First and Fourteenth Amendments to the United States Constitution and Article 1, Section 6 of the Texas Constitution, the decisions of religious organizations regarding ecclesiastical matters must be accepted by the trial court. Patterson contends the trial court erred in its judgment because genuine issues of fact exist as to: whether a seminary is a "church"; whether the dispute concerns ecclesiastical matters; and whether Patterson's procedural and substantive rights under the Seminary by-laws have been violated. Because this case essentially involves a religious dispute, the resolution of which is for ecclesiastical tribunals, we overrule Patterson's points of error and affirm the trial court's judgment.

Patterson was a tenured Associate Professor and faculty member at the Seminary. He was employed by the Seminary from January 1, 1969 to October 21, 1985. Formal charges were brought against him

at the Academic Affairs Committee (Committee) hearing in March 1985.

The formal charges included:

(1) Patterson's lifestyle and behavior were inconsistent with the example expected of faculty members at Southwestern;

(2) Patterson presented a poor example of churchmanship;

(3) the quality of Patterson's work at the Seminary was poor;

(4) Patterson had engaged in insubordination and had intruded into administrative affairs;

(5) Patterson had intentionally distorted the truth in reporting Seminary matters; and

(6) Patterson did not adequately respond to significant warnings and attempts by the Seminary to work with him to resolve his problems.

At this March 1985 hearing, the Committee recommended Patterson's employment be terminated. However, the trustees elected not to terminate his employment at that time, but continued to consider the matter. Patterson was present at, and participated in, this proceeding.

In the fall of 1985, the Committee presented a progress report on Patterson. Patterson was not present at this meeting. The trustees reviewed the report and voted to dismiss Patterson from the faculty. Patterson sued the Seminary and its President, Russell H. Dilday, Jr., for wrongful termination of his employment contract. The Seminary and Dilday moved for and the trial court granted summary judgments. Patterson appeals only the judgment for the Seminary.

■ The Seminary contends Patterson filed identical claims against it and Dilday, and the trial court granted summary judgment because it lacked subject matter jurisdiction. Therefore, the Seminary concludes Patterson's decision not to appeal the judgment for Dilday foreclosed this appeal because the judgment for Dilday is res judicata on the issue of subject matter jurisdiction.

First, we note the claims against the Seminary and Dilday are not identical. Patterson sought to prove the Seminary breached a contract while he sought to make Dilday *individually* liable for such breach.

■ Secondly, the trial court did not specify the rationales for its judgments, so their bases are determined by the grounds the parties advanced in their motions. *See Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989). Dilday moved for summary judgment on the basis that he could not be *individually liable* for Patterson's claim he had a contract which was breached. Therefore, the trial court's judgment for Dilday was based on his *status*. The Seminary claimed, and judgment was entered because the trial court lacked subject matter jurisdiction. So, contrary to the Seminary's contention, the trial court decided different issues in its judgments for Dilday and the Seminary. Patterson is free to challenge one and not the other.

■ In his first point of error, Patterson claims the trial court erred in entering summary judgment because there is a fact issue concerning whether a seminary is a "church." We overrule this point of error because it is not a basis for reversal, since First Amendment protection is not limited to disputes between a "church" and a "minister." Rather, the key inquiry under the First Amendment is whether a religious organization is making an ecclesiastical decision. *The Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 709, 96 S.Ct. 2372, 2382, 49 L.Ed.2d 151 (1976); *Crowder v. Southern Baptist Convention*, 828 F.2d 718, 724 (11th Cir.1987), *cert. denied*, 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988).

This key inquiry is the focus of Patterson's second point of error, in which he complains there is a genuine question of fact as to whether the dispute requires judicial resolution of the decisions of a religious organization concerning ecclesiastical matters.

■ The summary judgment evidence is the Seminary's faculty manual, bylaws,

minutes from the board of trustees meetings, and affidavits of Russell H. Dilday, Jr., President of the Seminary, Hubert R. Martin, Jr., Vice President of Business Affairs of the Seminary, and Patterson. The uncontroverted evidence shows the Seminary is owned by the Southern Baptist Convention for the purpose of training ministers to serve the Baptist faith. Therefore, the Seminary is a religious organization entitled to protection under the First Amendment. *See E.E.O.C. v. Southwestern Baptist Theological Seminary,* 651 F.2d 277, 281 (5th Cir.1981). The First Amendment protection extends to the current dispute, which concerns the Seminary's act of terminating Patterson's employment as a tenured professor because, as we explain below, this is a matter of ecclesiastical concern.

■ Employment decisions are governed by the Seminary faculty manual and bylaws which set out the criteria for hiring and firing faculty members. The qualification criteria are:

(1) Every member of the faculty shall have adequate academic preparation and demonstrated experience for the discipline of teaching.

(2) Every member of the elected faculty *shall be an active and faithful member of a Baptist church* cooperating with the Southern Baptist Convention.

(3) Every member of the faculty *shall subscribe in writing to the Articles of Faith* referred to in Article I of these bylaws. [Emphasis added.]

The criteria for terminating a faculty member's service are:

(a) Should an elected faculty member feel that he can *no longer subscribe to the Seminary's Articles of Faith,* he would be expected voluntarily to sever relations with the institution.

(b) Other grounds for termination of service include incompetence, *moral delinquency,* or *failure to perform duties properly.* [Emphasis added.]

This uncontroverted evidence demonstrates the Seminary makes employment decisions regarding faculty members largely upon religious criteria. This is consistent with the Seminary's primary purpose of providing "theological education for men and women preparing for Christian ministry." Additionally, the summary judgment proof establishes there is no course taught at the Seminary that has a strictly secular purpose and Patterson was a Professor of *Preaching* and Communication. We hold the matter of Patterson's employment was clearly one of ecclesiastical concern, and could not be resolved without reference to the spiritual meaning of the requirements and guidelines set forth in the faculty manual. Point of error two is overruled.

In his final point of error, Patterson complains a genuine fact issue exists as to whether his procedural and substantive rights under the Seminary bylaws have been violated.

■ The Seminary bylaws list the dismissal procedures, which include:

(e) *If, as a result of the discussion of the charges submitted, no reconciliation is possible, the President shall submit a recommendation for dismissal to the Board of Trustees through its committee for Academic Affairs. The faculty member shall have the privilege of a hearing before this committee. He may exercise the privilege of asking a colleague to sit in on this hearing.* [Emphasis added.]

The dismissal procedures are part of the summary judgment evidence and they establish the Seminary has guidelines regarding resolution of disputes with its faculty members, and the board of trustees is the adjudicating tribunal. Where religious organizations establish such guidelines and have tribunals for adjudicating disputes over these matters, the Constitution requires that civil courts accept their decisions as binding upon them. *Crowder,* 828 F.2d at 724.

■ In *Milivojevich,* the Supreme Court held that the inquiry into whether the *church laws* and *procedures* had been complied with violated the First Amendment. *Milivojevich,* 426 U.S. at 713, 96 S.Ct. at 2382, 49 L.Ed.2d at 165. In so holding, the Court stated:

[I]t is the essence of religious faith that ecclesiastical decisions are reached and are to be accepted as matters of faith whether or not rational or measurable by objective criteria. Constitutional concepts of due process, involving secular notions of "fundamental fairness" or impermissible objectives, are therefore hardly relevant to such matters of ecclesiastical cognizance.

*Id.* at 714–15, 96 S.Ct. at 2382–83. Civil courts are bound to accept the decisions of the highest judicatories of a religious organization of hierarchical polity on matters of discipline, faith, internal organization, or ecclesiastical rule, custom, or law. *Id.* at 713, 96 S.Ct. at 2382.

Southern Baptists have a congregational form of church government, as opposed to a hierarchical system of church government. However, the same rule is applicable to congregational systems, in that civil courts, with reference to the determination of matters that are ecclesiastical in nature, are to give deference to those officers in which are vested the authority to make such a determination. *See Crowder*, 828 F.2d at 727. Therefore, we overrule Patterson's claim the Seminary violated his substantive rights under the bylaws.

In addition to his substantive rights, Patterson argues the Seminary violated his procedural rights. In particular, Patterson claims this is an employment contract dispute and the trial court has jurisdiction to hear it, because it can be resolved by applying "neutral principles of law." Patterson cites cases that do not involve ecclesiastical matters to support his argument.

The current case is most similar to *Milivojevich*, in which the court concluded that the civil court may not decide whether the church complied with the procedural rules contained in the church constitution and penal code in defrocking one of its bishops. *Milivojevich*, 426 U.S. at 722–23, 96 S.Ct. at 2386–87, 49 L.Ed.2d at 170–71. The court also announced the trial court may not use the guise of the "neutral principles" approach to delve into issues concerning whether the general church acted beyond its authority under the church constitution in declaring a reorganization of the Dioceses. *Id.* Just as the church constitution concerns the internal governance of the Diocese, the bylaws concern the internal governance of the Southwestern Baptist Theological Seminary. Therefore, the trial court could not delve into issues concerning whether Patterson's employment was terminated in accordance therewith. Point of error three is overruled.

The trial court's order dismissing this action is affirmed.