DIOCESE OF GALVESTON-HOUSTON, Relator,

v.

The Honorable Kathleen STONE, Judge of the 55th District Court of Harris County, Texas, Respondent.

No. B14–94–00632–CV.

Court of Appeals of Texas, Houston [14th Dist.].

Dec. 19, 1994.

Rehearing Overruled March 2, 1995.

**OPINION**

BARRON, Justice.

This is an original mandamus proceeding. The real party in interest, Eric May, sued relator, the Diocese of Galveston–Houston (the "Diocese"), for breach of contract (wrongful termination) and related claims, in connection with May's termination as a teacher/administrator at Mt. Carmel High School ("Mt. Carmel"). The Diocese seeks mandamus relief from a trial court Order allowing limited discovery against the Diocese (and withholding ruling on a plea to the jurisdiction), on the ground the trial court lacks subject matter jurisdiction based on excessive government entanglement in church affairs. U.S. CONST. amend. I, XIV; TEX. CONST. art. I, § 6. The Diocese asks us to command the trial court, Judge Kathleen Stone, (1) to withdraw her order allowing limited discovery, and (2) to dismiss May's suit with prejudice.

We initially granted leave to file the petition for writ of mandamus and heard oral argument. On further reflection, we believe the writ of mandamus was improvidently granted, this proceeding being premature, there being fact issues to be resolved by the trial court, and there being an adequate remedy at law once the jurisdictional issue becomes ripe.

**I.**

Because this matter comes to us on an undeveloped factual record below, we summarize the following facts from the Original Petition and the papers before us.

Mt. Carmel is a coeducational Roman Catholic secondary school. In the Fall of 1988, May, a Protestant, was hired as a Latin teacher, under a one-year employment agreement to be renewed annually, from August 1 through July 31 of the succeeding year. In 1991–1992, May earned the School's Outstanding Teacher Award and received a commendation from the mayor of Houston. In January 1993, May was promoted to vice-principal in charge of discipline.

In the Spring of 1993, May was investigated for sexual harassment of several female

David M. Feldman, Richard A. Morris, Houston, for relator.

Paul S. Francis, Houston, for respondent.

Before SEARS, LEE and BARRON, JJ.

students. In June 1993, May signed his contract for the 1993/94 school year.

On July 21, 1993, the School Principal, Anthony Durso, wrote May advising him of the findings of the investigation [which was inconclusive as to sexual harassment] and some resultant conditions on May's employment for the upcoming year.[1]

May's demotion involved a substantial pay cut. May attempted to resolve a perceived conflict between provisions in his contract and the conditions on his future employment,[2] and was told the letter had to be accepted as written or he would be terminated. May did not sign the letter and was terminated. May appealed to the School Board (the Board). On July 28, 1993, the Board voted unanimously to support May and requested the Bishop rescind the actions taken against May. May attempted to initiate a grievance proceeding with the Diocese but it was not acknowledged.

On August 23, 1993, May sued the Diocese alleging: breach of contract (wrongful termination); intentional infliction of emotional distress (in flagrantly disregarding Diocese grievance procedures and progressive-discipline policies); and negligence/gross negligence (in the manner the investigation against May was conducted).

On April 22, 1994, the Diocese filed a Plea to the Jurisdiction requesting dismissal, contending that under both federal and state constitutions the trial court lacked jurisdiction to review the Diocese's "religious-based" decision to fire May for refusing to agree to its conditions. May filed a response. In discussing the plea to the jurisdiction with the lawyers, trial judge Kathleen Stone opined that the constitutional issue would be more properly presented in a motion for summary judgment, following limited discovery to respond to the jurisdictional attack. May filed a motion to take limited discovery and a motion to compel.[3] Judge Stone entered an Order expressly withholding ruling on the plea to the jurisdiction, allowing limited discovery and providing for post-discovery presentation of the jurisdictional issue in a

---

1. Durso wrote May:

> ... an investigation has been conducted regarding allegations of sexual harassment lodged against you by students, former and current staff, and parents ... During the ... investigation, these individuals, as well as yourself and other individuals who were believed to have information which would tend to discredit or otherwise contradict the allegations were contacted and interviewed. The investigation revealed contradictory and, thus, inconclusive evidence regarding the occurrence of sexual harassment. The investigation did, however, reveal that you have repeatedly demonstrated:
> 1) lack of sensitivity for the sensibilities of both students and staff members regarding issues of a personal and/or sexual nature.
> 2) poor judgement in dealing with students and staff regarding such issues; and
> 3) use of inappropriate and demeaning language with both students and staff members.
> As a result, future employment with Mr. Carmel High School will be conditioned upon your meeting the following requirements:
> 1) you will not be returned to your position as vice-principal of discipline, nor will you participate in Mr. Carmel's discipline program in any capacity beyond your role as a classroom teacher;
> 2) you will immediately cease and desist from using abusive, profane, and/or otherwise inappropriate language with both students and fellow staff members;
> 3) you will attend a seminar or class on sexual harassment in order to raise your sensitivity to such issues;
> 4) you will not, in any way, retaliate against any of the individuals who participated in the investigation of the allegations against you;
> 5) you will fully cooperate in any efforts on the part of myself and/or the Superintendent of Diocesan Schools, to ensure that you comply with these conditions; and
> 6) any future inappropriate behavior on your part will result in your immediate termination.
> A copy of this letter will be retained in your permanent personnel file. If you agree to comply with the conditions set forth above, please indicate your agreement in the signature block ... and return the original of this letter to me no later than end of business on, Monday, July 26, 1993. Your signature does not indicate your agreement with the conclusions ... but does indicate your approval of and agreement to conditions 1–6 above.

2. May's employment contract incorporated Policies which provided for progressive discipline in the event problems develop between a faculty member and school administration.

3. The record before this Court includes plaintiff's first and second set of interrogatories (attached to the motion). Relator's specific objections to each such request, if any, are not a part of the record.

motion for summary judgment, if appropriate.[4]

On June 23, 1994, the Diocese filed this original proceeding, complaining of the trial court's retention of jurisdiction and the breadth of the Order regarding discovery.

## II.

██ Mandamus is an extraordinary remedy available only in cases of manifest and urgent necessity. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992). Mandamus issues only to correct a clear abuse of discretion or the violation of a duty imposed by law, when there is no other adequate remedy at law. *Cantu v. Longoria*, 878 S.W.2d 131, 132 (Tex.1994) (per curiam). The writ may not issue when an adequate remedy at law exists. *Holloway v. Fifth Court of Appeals*, 767 S.W.2d 680, 684 (Tex.1989); *Street v. Second Court of Appeals*, 715 S.W.2d 638, 639–40 (Tex.1986). A trial court abuses its discretion when it reaches a decision "so arbitrary and unreasonable as to amount to a clear and prejudicial error of law" [*Id.*], in other words where the trial court acts without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

██ In actions where jurisdiction is challenged, all allegations in the plaintiff's pleadings are accepted as true. *Green v. Watson*, 860 S.W.2d 238, 240 n. 2 (Tex. App.—Austin 1993, n.w.h.). Even where there has been a determination as to subject matter jurisdiction, it is not properly attacked by mandamus since an adequate remedy exists on appeal. *Bell Helicopter Textron, Inc. v. Walker*, 787 S.W.2d 954, 955

(Tex.1990) (per curiam); *Brown v. Herman*, 852 S.W.2d 91, 92 (Tex.App.—Austin 1993, orig. proceeding) (per curiam). Where the jurisdictional issue has not been ruled on, it is premature to seek mandamus relief from such an order. *Sharm, Inc. v. Euresti*, 883 S.W.2d 701, 703 (Tex.App.—Corpus Christi 1994, orig. proceeding); *Cf. Geary v. Peavy*, 878 S.W.2d 602, 603 (Tex.1994) (per curiam).

██ In determining if extraordinary relief is warranted, an appellate court may not deal with underlying factual disputes. *Walker*, 827 S.W.2d at 839; *Brady v. Fourteenth Court of Appeals*, 795 S.W.2d 712, 174 (Tex. 1990); *Carter v. Fourteenth Court of Appeals*, 789 S.W.2d 260, 261 (Tex.1990). On matters of fact, the Diocese would have to show that the trial court could reasonably have reached but one conclusion. *GAF Corp. v. Caldwell*, 839 S.W.2d 149, 150 (Tex.App.— Houston [14th Dist.] 1992, orig. proceeding).

## III.

The Diocese maintains that the trial court lacks subject matter jurisdiction over May's claim because "review of whether the Diocese had sufficient grounds to take action on May's employment and whether the Diocese complied with its own policies would result in excessive government entanglement in church affairs, thus violating the First and Fourteenth Amendment[s] to the United States Constitution as well as Article I, Section 6 of the Texas Constitution." In its petition for writ of mandamus the Diocese points to particular evidence claiming religious concerns were shown in connection with the termination and thus there is excessive entanglement; in its reply brief the Diocese claims the jurisdictional inquiry is pro-

---

**4.** "... for the Plaintiff to be able to respond to the issues raised by the Defendant Diocese ... in its Plea To The Jurisdiction, ... hereafter [to] be presented as a Motion for Summary Judgment, the Plaintiff needs ... certain [discovery], it is therefore

ORDERED, ADJUDGED AND DECREED that the Plaintiff Eric May is hereby given leave to take the oral depositions of [seven named individuals], and in these depositions ... may inquire *into the facts establishing the nature of the parties' relationship, the facts underlying the Defendant's actions with respect to Mr. May's*

*employment in 1993, and the reasons for such action.* (emphasis added). The abovementioned discovery shall be completed ... following which *the Defendant Diocese may then present a Motion For Summary Judgment* representing the issues described in its previously filed [sic.] Plea To The Jurisdiction. It is further,

ORDERED that the Defendant Diocese shall further serve upon Plaintiff's counsel within 30 days from the date of this Order full and complete answers to each of the interrogatories ... in the Plaintiff's First and Second Set of Interrogatories. (emphasis added)."

hibited regardless of whether the termination was ecclesiastically based.

May contends relator's actions were not based on religious criteria and that this is not an ecclesiastical matter into which courts are prohibited from delving.

## IV.

Jurisdiction is a court's first consideration. *Bell v. Moores*, 832 S.W.2d 749, 753 (Tex.App.—Houston [14th Dist.] 1992, writ denied). Subject matter jurisdiction exists when the nature of the case falls within the general category of cases the court is empowered, under applicable statutory and constitutional provisions, to adjudicate. *City of El Paso v. Madero Development*, 803 S.W.2d 396, 399 (Tex.App.—El Paso 1991, writ denied), *cert. denied*, 502 U.S. 1073, 112 S.Ct. 970, 117 L.Ed.2d 135 (1992). The jurisdictional test is whether the court has the power to enter upon an inquiry and not whether its conclusions are correct. *Brown*, 852 S.W.2d at 93. It is undisputed that civil district courts generally have jurisdiction over the type claims the real party in interest, May, asserts: breach of contract, intentional infliction of emotional distress and negligence/gross negligence. A court has the power to determine the facts underlying its jurisdiction. *State v. Hipp*, 832 S.W.2d 71, 75–76 (Tex.App.—Austin 1992), *rev'd on other grounds*, 867 S.W.2d 781 (1993).

Thus, we believe that the trial court did not abuse its discretion in taking steps to clarify the factual context of the Diocese's jurisdictional challenge and that the mandamus at this stage of the proceeding is premature.

## V.

There is nothing to show the decision to terminate May in fact involved religious concerns so that excessive entanglement will result from discovery, or must by necessity result because, as a matter of law, religious concerns are implicated. It would be improper for this court to resolve facts in a mandamus proceeding. *Walker*, 827 S.W.2d at 839; *Brady*, 795 S.W.2d at 714; *Carter*, 789 S.W.2d at 261. Further, since the trial court withheld ruling on the jurisdic-

tional issue pending limited discovery to ascertain the facts underlying its jurisdiction, if any, this proceeding is premature. The post-discovery motion for summary judgment contemplated in Judge Stone's Order provides the Diocese with an adequate remedy at law should discovery reveal the controversy is of a religious nature.

The Diocese claims that under *Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976) and *Patterson v. Southwestern Baptist Theological Seminary*, 858 S.W.2d 602 (Tex. App.—Fort Worth 1993, writ dism'd by agr.), May's claims are barred without discovery. We disagree.

In *Patterson*, the Fort Worth Court of Appeals affirmed a summary judgment in favor of a Church for lack of subject matter jurisdiction under the First Amendment, in a wrongful termination suit a professor of preaching had instituted against a Baptist seminary. *Id.*, at 602. The summary judgment evidence established that the dispute clearly involved ecclesiastical matters. The seminary's sole purpose was to educate persons studying for the ministry; no strictly secular courses were taught. *Id.* Church rules required all faculty be practicing Baptists and subscribe to the articles of faith. *Patterson*, 858 S.W.2d at 605. The Seminary's employment decisions about faculty were based largely on religious criteria, consistent with the Seminary's primary purpose. Recognizing that generally civil courts defer to a religious organization's highest tribunal's decisions on discipline, faith, internal organization, or ecclesiastical rules, custom, or law, "the matter of Patterson's employment could not be resolved without reference to the spiritual meaning and guidelines set forth in the seminary's faculty manual." *Id.* The key was the summary judgment evidence established that Patterson's employment as a professor of preaching was an ecclesiastical decision.

Likewise, *Milivojevich* clearly involved a "quintessentially religious controvers[y]": a Bishop's defrockment and a dispute over the division of a Diocese. *Milivojevich*, 426 U.S. at 713–14, 718, 720, 96 S.Ct. at 2382–83,

2384–85, 2385–86. In that context, on appeal following a trial on the merits, the United States Supreme Court reversed the Illinois Supreme Court which had reviewed Church decisions, holding that the State Court's detailed review of the evidence was impermissible on First and Fourteenth Amendment grounds. *Id.* at 719, 96 S.Ct. at 2385.

■ May alleges, in substance, that he was terminated for non-religious reasons: based on a false smear campaign instigated by, among others, previously terminated faculty members. Because the underlying dispute was raised by a plea to the jurisdiction, the trial court was required to accept those allegations as true. *Green,* 860 S.W.2d at 240 n. 2. Furthermore, *relator* has proffered evidence in this original proceeding which is consistent with May's claim that his termination was not on religious grounds but rather was based on political infighting.[5] Facts about general matters also point away from the implication of religious concerns. Mt. Carmel, a Roman Catholic institution, regularly accepted students and faculty of all religions (e.g. May is a protestant) and provided an essentially secular, non-religious curriculum. May was not in the chain of ecclesiastical command. His responsibilities were secular and did not involve teaching religion. May taught languages, and his duties for 1993–1994 were to have been supervising the school chess club, the detention program and the summer work program. May's responsibilities as vice principal included: (i) facilities/grounds management; (ii) transportation; (iii) security; and (iv) student discipline.

The Diocese, on the other hand, claims the evidence shows the Bishop's decision to fire May for refusing to agree to the conditions was, in fact, religiously based: that the Bishop had concluded that May had breached Diocesan policies by using sexually explicit language and that May insisted on using military-style discipline which was inconsistent with Mt. Carmel's mission. Our review of that evidence which was apparently appended to the plea to the jurisdiction, does not show such reasons given for the termination. In fact, in its later filed reply brief, relator admits that the letter it had cited in its petition for writ of mandamus as showing the reasons May was fired, in fact does not disclose the reason for May's termination. Relator's reply brief, p. 12.

■ We do not attempt to resolve these facts, but merely highlight the horns of the dilemma in which the trial judge found herself: balancing the strict requirements of a jurisdictional plea against our deep-seated respect for First Amendment religious values. It is precisely because this factual dispute exists that mandamus is improper. *Walker,* 827 S.W.2d at 839; *Brady,* 795 S.W.2d at 714; *Carter,* 789 S.W.2d at 261. To prevail on its claim, the Diocese would have to show that Judge Stone could have reached but one conclusion on these facts: that May was fired for religious reasons. *Caldwell,* 839 S.W.2d at 150. How could she have made a jurisdictional determination without resolving the underlying facts? In this context, we cannot say that Judge Stone abused her discretion in allowing May to

5. Apparently May had had a major conflict with another teacher, Ms. Willie, who had been terminated, and May's problems may have arisen from a smear campaign instigated by supporters of Ms. Willie. This was the School Board's conclusion, and thus the Board recommended the Bishop's actions against May be rescinded. In a letter written on May's behalf, one parent, Ms. Kirby, wrote "[m]y personal feeling is that there is a lot of political fallout resulting from the previous administration, and this in turn is causing unrest and discontent among certain parents and faculty members." The School's Business Manager, Jeanette Mushinski, wrote "[w]e became a dysfunctional faculty and staff over the last year. Certain teachers, such as Mr. May ... manipulate[d] Mr. Durso [the principal] and squeeze[d] out the ones they felt were harmful."

Ms. Corne, another parent, wrote Mt. Carmel's Principal about May having a very biased and sexist agenda toward female students, as opposed to the excellent female role model Ms. Willie had been. This sentiment was echoed in a letter from Mrs. Leal, another parent, who wrote about Ms. Willie's termination that "she [Willie] was fired because she met with [the] principal ... and stood up for the students and let him know how Mr. May was treating them." Ms. Leal recommended May "be terminated for being so unprofessional and incompetent ...", and she [Leal] was "considering calling Channel 13 to do an undercover investigation ..." May wrote the Principal, Mr. Durso: "In politics as war, pursuit of compromise with your blood enemies generally results in your defeat."

attempt to prove his case while at the same time tailoring the inquiry to avoid entanglement. It is for the trial court to resolve the jurisdictional inquiry in the first instance, and this we believe is precisely what Judge Stone has attempted to do in issuing the Order which we believe accounts for first amendment concerns.

We cannot find a case, nor has relator cited us to any such case, where mandamus issued on jurisdictional grounds to prohibit a Court from ascertaining facts underlying its jurisdiction. In both *Milivojevich* and *Patterson*, there was *evidence* that the particular controversies in issue were clearly of an essentially *religious nature*, and thus the jurisdictional defect was clear. In both cases, the churches had an adequate remedy at law on appeal. Similarly, at this juncture the Diocese has an adequate remedy at law, in that if the facts show it is improper for the Court to proceed on jurisdictional grounds, the Order expressly contemplates the filing of a motion for summary judgment at a later date.

■ "[W]hile ordinarily the civil courts have no jurisdiction over and no concern with, purely ecclesiastical questions and controversies, they do have jurisdiction as to civil, contract, and property rights even though such rights are involved in, or arise from, a church controversy." *Waters v. Hargest*, 593 S.W.2d 364, 365 (Tex.Civ. App.—Texarkana 1979, no writ); *Lide v. Miller*, 573 S.W.2d 614, 615 (Tex.Civ.App.— Texarkana 1978, no writ); *Gray v. Saint Matthews Cathedral Endowment Fund*, 544 S.W.2d 488, 492 (Tex.Civ.App.—Texarkana 1976, writ ref'd n.r.e.). So long as there is no involvement in resolving underlying controversies over religious doctrine, civil courts may resolve church disputes over property. *Milivojevich*, 426 U.S. at 710, 96 S.Ct. at 2381; *Maryland and Virginia Elder of Ch. of God v. Church of God*, 396 U.S. 367, 368, 90 S.Ct. 499, 500, 24 L.Ed.2d 582 (1970) (per curiam). "That faculty members are expected to serve as exemplars of practicing Christians does not serve to make the terms and conditions of their employment matters of church administration and thus purely of ecclesiastical concern." *EEOC v. Mississippi*

*College*, 626 F.2d 477, 485 (5th Cir.1980), *cert. denied*, 453 U.S. 912, 101 S.Ct. 3143, 69 L.Ed.2d 994 (1981).

We believe the situation presented here is most like that in *Minker v. Baltimore Annual Conf.*, 894 F.2d 1354, 1359–61 (D.C.Cir. 1990). There, the United States Court of Appeals for the District of Columbia Circuit reversed a dismissal of a minister's contract action against a church on First Amendment grounds, and allowed the minister to proceed on his contract claim "to the extent he can divine a course clear of the Church's ecclesiastical domain." (The contract claim was based on passages from the Book of Discipline and on oral promise to find the minister a congregation more suited to his training and skills in exchange for his continued work on temporary assignment). If a minister can maintain a contract action against a church, we cannot say that the trial court abused her discretion in concluding that lay teachers in a parochial school setting must also have that right, so long as consideration of church doctrine is not involved. In allowing the minister to proceed on his contract action, the *Minker* court recognized that a "fairly direct inquiry" into the jurisdictional issue might lead to a legitimate summary judgment motion followed by termination of the claim; however,

> it might turn out that the potentially mischievous aspects of [the minister's] claim are ... subject to entirely neutral methods of proof. The speculative nature of our discussion here demonstrates why it is premature to foreclose [the minister's] contract claim. Once evidence is offered, the district court will be in a position to control the case so as to protect against any impermissible entanglements. *Id.* at 1360.

■ Similarly, the speculative nature of the discussion in the case before us demonstrates why it was premature for Judge Stone to foreclose this case on jurisdictional grounds. The evidence is unclear and could reveal that the decision to terminate May was not based on religious criteria, and thus jurisdiction may not ultimately be constitutionally constrained. On the other hand, it is certainly possible the limited discovery may reveal a jurisdictional impediment to May

proceeding further. Judge Stone, not this Court, has the power to determine facts underlying the Court's jurisdiction. *Hipp,* 832 S.W.2d at 75–76. Thus, we believe that the trial court did not abuse its discretion in allowing limited discovery to clarify the context of the Diocese's jurisdictional plea: to determine whether the decision to fire May was "religious-based." Furthermore, because Judge Stone has not yet ruled on the plea to the jurisdiction and because her Order contemplates an adequate remedy at law, mandamus will not lie at this stage of the proceeding. *Sharm,* 883 S.W.2d at 703; *Holloway,* 767 S.W.2d at 684.

Relator next posits that excessive entanglement results, not from facts establishing a religious controversy in fact, but as a matter of law from the discovery process itself. For this proposition relator relies on *Rayburn v. General Conf. of Seventh–day Adventists,* 772 F.2d 1164, 1171 (4th Cir.1985), *cert. denied,* 478 U.S. 1020, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986), and *NLRB v. Catholic Bishop of Chicago,* 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979). We disagree. *NLRB* and *Rayburn* involved ecclesiastical concerns based on the facts known to the Court. *NLRB* was an appeal from the National Labor Relations Board's exercise of jurisdiction over employees of religious institutions, which was to include mandatory bargaining. Likewise, *Rayburn* was and appeal from a summary judgment dealing with the church's free choice of persons for pastor.

 Unlike the situations presented in *NLRB* and *Rayburn,* a bare potential or hypothetical possibility of entanglement will not justify the issuance of mandamus relief. *E.E.O.C. v. Mississippi College,* 626 F.2d 477, 487 (5th Cir.1980). Here, May's situation—that of a single teacher's claim for money damages—does not pose the same inevitability of entanglement as the NLRB's review of church employment decisions in the face of mandatory bargaining or the a church's choice of pastor. *NLRB,* 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533; *Rayburn,* 772 F.2d 1164. So long as May does not delve into areas within the ecclesiastical domain, he should be allowed to determine if

religious concerns formed the basis of his termination.

In finding the trial court did not abuse her discretion in allowing limited discovery to ascertain jurisdictional facts, we in no way suggest that a Court would ever have the power to second guess a Church's religious based employment decision—once the decision is found to have a religious basis—or to oversee whether the Church complied with internal policies and procedures.

 The Diocese's final argument is that jurisdiction and discovery are improper because allowing court review of the validity of May's termination will impermissibly chill the Diocese's ability to set standards of behavior in parochial schools, citing *NLRB,* 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533. We disagree. In *NLRB, id.,* the Court recognized that requiring collective bargaining with lay faculty members at church associated schools would necessarily have a chilling effect on the bishops' control of the schools' religious mission. We fail to see how allowing a single discovery Order solely to determine the jurisdictional inquiry (i.e. if ecclesiastical concerns are involved) in a case where the underlying facts are unresolved will impermissibly chill the church's ability to make future employment decisions. When faced with a similar argument, Judge Mikva, in writing for the Court of Appeals for the District of Columbia Circuit, held "the First Amendment does not immunize the church from all temporal claims made against it." *Minker,* 894 F.2d at 1360. We agree.

Likewise, we find guidance in Justice Gessell's concurrence in *Minker.* 894 F.2d at 1362–61. Justice Gessell struggled with the problem of reviewing First Amendment claims in a factual vacuum, and recognized the danger, in the absence of a meaningful record, of "some who seek to avoid scrutiny ... by exploiting a marginal First Amendment religious claim". To avoid this potential abuse, Justice Gessell therefore favored "the law to evolve in this difficult area case-by-case, aided, whenever necessary, by meaningful records developed on factual motions or trial". Here, Judge Stone has attempted to fashion such a nonintrusive remedy to determine whether a religious concern

exists, and therefore we do not believe that in so doing she abused her discretion.

## VI. CONCLUSION

■■■■ We agree with the learned trial judge's view that discovery limited to ascertaining facts related to the jurisdictional plea is proper. Leave to file the petition for writ of mandamus was improvidently granted based on: (1) prematurity; (2) the impropriety of resolving factual issues in an original proceeding; and (3) the availability of an adequate remedy at law. Our prior order granting leave to file the petition for writ of mandamus and staying trial proceedings is vacated. We overrule the motion for leave to file the petition for writ of mandamus.

In dealing with these difficult issues we note:

> Courts must always be wary of efforts to invoke their temporal powers in place of churchly powers. Such efforts are inconsistent with the free exercise of religion that the first amendment asserts to be inviolate. But the line between such proscribed lawsuits and legitimate claims for commercial obligations of a church is a thin one. *It is that thin line which we direct the district court to find and hew* to in this case. Appellant [a minister] is entitled to prove up his claim of breach of an oral contract to *the extent that he can divine a course clear of the Church's ecclesiastical domain.* For such limited purposes, the case is Remanded. (emphasis added). *Id.* at 1361.

As this proceeding comes before us, we cannot say that the trial court abused her discretion in attempting to first resolve the jurisdictional inquiry while at the same time remaining sensitive to constitutional concerns. We are constrained from issuing mandamus relief since facts are in dispute, the matter is premature and relator has an adequate remedy at law following narrowly tailored discovery. Plaintiff should be permitted to discover the reason(s) for his termination, and whether that employment decision was motivated by religious concerns. Thus, while the district court is constitutionally constrained from permitting inquiry into Diocese compliance with its own policies and the Diocese's assessment of May's suitability to teach at Mt. Carmel if the decision to terminate was motivated by religious concerns, we believe the district court is not prevented from first determining whether the termination had an ecclesiastical basis.

We do not preclude the possibility that future application for mandamus relief might be appropriate under circumstances not yet presented to this court.

LEE, Justice, concurring.

I concur in the result reached by the majority in this case. The district court's order limiting discovery was necessary to determine whether the court had jurisdiction over the suit.

SEARS, Justice, dissenting.

I respectfully dissent from the majority opinion. The majority believes that there should be some discovery in this case to determine the "reasons for termination" of Eric May. However, the reasons for termination of a teacher at a Catholic school are not and should not be subject to interference by the Texas courts.

It is undisputed that the Diocese of Galveston–Houston is owned and controlled by the Catholic church. Also, it is uncontradicted that the responsibility for hiring and firing teaching personnel lies directly with the bishop. The majority opinion holds that the trial court should be able to order "limited" discovery to determine the "real reasons" for the firing of Eric May. However, the matter of the employment of a teacher at a religious school is "clearly one of ecclesiastical concern, and could not be resolved without reference to the spiritual meaning of the requirements and guidelines...." *Patterson v. Southwestern Baptist Seminary,* 858 S.W.2d 602, 605 (Tex.App.—Fort Worth 1993, no writ). It is also well known that the Catholic church establishes guidelines and has an *internal* structure for resolving disputes with personnel of the church and/or the church's schools. The Pope is the final arbitrator and the final word on all disputes within the church. So much so that the United States Constitution requires that civil

courts accept the decisions of religious organizations as binding upon them. *Crowder v. Southern Baptist Convention,* 828 F.2d 718, 724 (11th Cir.1987), *cert. denied,* 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988).

Although the majority would allow the trial court to delve into a limited review of the evidence, the United States Supreme Court has held that it is impermissible under the First and Fourteenth Amendments to the United States Constitution. *The Serbian Eastern Orthodox Diocese for the United States of America and Canada, et al. v. Milivojevich, et al.,* 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976). The Supreme Court held that civil courts were required to accept the consequences of ecclesiastical determinations and abide by the decisions made in resolving internal disputes. The Supreme Court further cited the First and Fourteenth Amendments as binding civil courts to "accept the decisions of the highest judicatories of a religious organization of hierarchical polity on matters of discipline, faith, internal organization, or ecclesiastical rule, custom, or law." *Id.* at 713, 96 S.Ct. at 2382. It is a simple question with a simple answer: Religious controversies are not the proper subject of civil court inquiry.

I would find that the firing of a teacher at a Catholic school is an ecclesiastical decision as a matter of law, that the church is the sole authority to make such ecclesiastical decisions, and that civil inquiry into those decisions is impermissible under the First and Fourteenth Amendments to the United States Constitution.

I would grant the writ of mandamus.