

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| IN RE: | § | No. 08-22-00081-CV |
| | § | |
| KENNETH MICHAEL HULLABY, | | AN ORIGINAL PROCEEDING |
| | § | |
| Relator. | | IN MANDAMUS |
| | § | |

## <u>MEMORANDUM OPINION</u>

Relator Kenneth Michael Hullaby, files this petition for writ of mandamus complaining of an interlocutory order appointing Carl D. Barrington, Jr. and Barbara M. Barrington ("the Barringtons) as managing conservators of a child. The order was signed on April 29, 2022 by the Hon. Lyda Ness Garcia of the 383rd District Court of El Paso County, Texas. Hullaby was married to the birth mother of the child, and as explained below, is the "presumptive father" of the child. The real parties in interest—the Barringtons—are seeking to adopt the child. The only issue raised by the mandamus that we could rule on is whether the 383rd District Court should have entered any order in the Barringtons' adoption and parental termination case pending in El Paso once Hullaby made it known to the trial court that a Bexar County District Court had previously decided a divorce and suit affecting the parent-child relationship (SAPCR) suit involving the same child.[1]

---

[1] The mandamus as first filed in this Court stated the single issue as:

We decline to grant mandamus because our record does not show that the trial judge below has actually ruled on the competing arguments about which court has primary jurisdiction to decide the several disputed issues involving who will parent the child. Mandamus is not a means for obtaining advisory opinions (which we do not give in any event), but to correct a clear abuse of discretion for a trial court's errant ruling (or more rarely, a refusal to rule). No definitive ruling has been made on the primary jurisdiction issue (or if it has, our record does not show it). With that caveat, we decline to grant the relief requested.

## I. BACKGROUND

The facts here arise from proceedings started in two different district courts: first, a termination and adoption action filed in El Paso County, and second, a related divorce action joined with a SAPCR filed in Bexar County.[2] Both cases involve the best interest of the child, A.D.B., who was born in December 2020. Relator Kenneth Hullaby is also the petitioner/husband in the Bexar County divorce and SAPCR proceeding, while Gloria Hullaby is the respondent/wife who

When presented with a mandatory obligation to concede jurisdiction to another Court is it appropriate for a Court legislatively directed to concede to then proceed in the matters when such would be in direct contravention to governing statutory language and intent?

Relator later filed a Reply Brief that restated the issue thusly:

Is an action sought by prospective adoptive parent(s) constitutionally repugnant when litigation is knowingly and fraudulently pursued to circumvent adoption laws that protect a constitutionally protected parent-child relationship?

The Reply then goes on to address questions such as standing, fraud, due process, and unjust enrichment. We reject any effort to so radically restate the issue before us, and address only the jurisdictional issue as originally stated by Relator. Moreover, Relator attempts to add materials into the record, such as affidavits executed *after* the filing of the original mandamus, and certainly after the complained of action from the trial court. We decline to consider these and limit the additional record material to any relevant pleadings filed before April 29, 2022, and to the transcript of the April 28, 2022 hearing that was referenced, but not included with the original filing.

[2] The termination/adoption suit is styled, "In the Interest of A.D.B., a child," Cause No. 2020DCM5892, 383rd District Court of El Paso County; while the divorce and SAPCR is styled, "In the Matter of the Marriage of: Kenneth Michael Hullaby and Gloria Alexandra Hullaby and the interest of A.D.B., a child," Cause No. 2021C118833, 73rd District Court of Bexar County.

2

gave birth to A.D.B. Real parties in interest, the Barringtons, are the petitioners in the underlying action filed in El Paso County which seeks the termination of parental rights and adoption of A.D.B.

**A. The El Paso Suit**

On November 11, 2020, the Barringtons filed their "Original Petition to Terminate Parent-Child Relationship and for Adoption of Child," in the 383rd District Court of El Paso County. The petition asserted the child, A.D.B., was expected to be born on January 1, 2021. Further, the suit alleged that Gloria was the mother of the child and that she would execute an irrevocable affidavit of relinquishment of parental rights before the case was heard. The petition also stated the child had no presumed father and that termination of the unknown father's parental rights would be in the child's best interest.

On December 28, 2020, the Barringtons gave notice of filing of an affidavit of relinquishment of parental rights of mother signed by Gloria. In her affidavit, Gloria claimed she was 26 and residing in El Paso County. She claimed to be the mother of the child, A.D.B., who was born on December 17, 2020. She asserted that A.D.B. had no presumed father and she did not know the identity or location of the child's father.

*1. The March 23, 2021 hearing*

On March 23, 2021, the El Paso County trial court held a termination and adoption hearing. The Barringtons, their attorney, and an amicus attorney appointed for the unknown father appeared at the hearing. The trial court took judicial notice of the affidavit of relinquishment signed by Gloria. Barbara Barrington offered the only testimony at the hearing. She testified that Gloria was an old family friend who had lived with her and her husband during her pregnancy. Throughout Gloria's pregnancy, Barbara explained that she and her husband had planned to adopt

3

Gloria's unborn child. Barbara was not only present at the birth of A.D.B. but she had also taken care of him as of his birth. She also disclosed that Gloria put the name that Barbara had chosen on the child's birth certificate.

Barbara testified that Gloria had signed the affidavit of relinquishment and she believed it would be in the child's best interest for her rights to be terminated. Barbara disclosed that Gloria was married, but she also described, as to her understanding, that Gloria's husband "had a vasectomy many years ago or at least several years ago," and he was not the father of the child. Barbara testified that no man had come forward claiming to be A.D.B.'s father.

The amicus attorney for the "unknown father" interviewed the Barringtons and testified that he found them to be a loving couple who would "take on the child with no problem." But he then noted that Gloria's husband, as a "presumed father," was entitled to receive citation on the termination suit.[3] The trial court agreed but then described that the Barrington's attorney had clarified the court would render an "interlocutory termination order on any alleged father and on the mother at [that] time." Before the hearing concluded, through questioning by the Barrington's attorney, Barbara confirmed she was asking the court to name her the managing conservator of the child in the meantime. She also added that her husband was in the military and that he had pending orders in June probably to be sent to Korea.

The amicus attorney recommended the Barringtons should adopt the child once the

---

[3] A presumption of paternity exists if a man is married to the mother of the child and the child is born during the marriage. *See* TEX.FAM.CODE ANN. § 160.204(a)(1). This presumption legally establishes the father-child relationship between the man and the child. *Id.* § 160.201(b)(1). A "presumed father" is "recognized as the father of the child until that status is rebutted or confirmed in a judicial proceeding." *Id.* § 160.102(13). "The presumption of paternity may be rebutted only by (1) an adjudication of the parentage of the child under Subchapter G of the family code or (2) the filing of a valid denial of paternity by a presumed father in conjunction with the filing by another person of a valid acknowledgment of paternity as provided by Texas Family Code Section 160.305." *In re C.B.B.*, No. 12-12-00106-CV, 2013 WL 1046323, at *3 (Tex.App.--Tyler Mar. 13, 2013, pet. denied) (mem. op.), *citing* TEX.FAM.CODE ANN. § 160.204(b)).

presumed father was joined in the action and the termination was proper. Before concluding, the trial court noted it had found it had jurisdiction over the parties and the subject matter of the case. The trial court further stated it had found that Gloria had executed an affidavit of relinquishment of parental rights and termination of her rights were in the child's best interest. It also found that termination of the parent-child relationship between the unknown father was in the best interest of the child as there was no one who was registered with the paternity registry. Lastly, the trial court appointed the Barringtons as the sole managing conservators of the child with all the rights and duties afforded to that status. The next day, March 24, 2021, the trial court rendered a written order stating: (1) it had jurisdiction over the parties and subject matter jurisdiction, (2) the termination of Gloria's parental rights was in the child's best interest, (3) the termination of the parental rights of "the alleged father" was in the child's best interest, and (4) that issues of the presumed father would be addressed later. The trial court's written order, however, did not make any provision for the conservatorship of the child.

### 2. Subsequent events following the March 2021 hearing

Following the hearing, the Barringtons filed an amended petition asserting for the first time that Kenneth was the presumed father of the child. The amended petition confirmed that Kenneth was entitled to citation. As grounds for termination, the amended petition asserted that Kenneth:

> (1) voluntarily left the child alone or in the possession of another without expressing an intent to return without providing for the adequate support of the child, and remained away for a period of at least three months;
>
> (2) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;
>
> (3) Engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child.

The petition also asked the court to order paternity testing and that an order of non-paternity be

5

entered.

In May 2021, Kenneth filed a pleading in the termination/adoption case titled, "Answer, Affirmative Defenses, Other Related Matters in Section Four, Subsection C, of TRCP, & Jury Demand." Kenneth stipulated that he was the father of the child. As factual background, he asserted that before October 28, 2016, Gloria resided with the Barringtons in Tennessee. She was then known as "Gloria Alexandra Tellez." On October 28, 2016, Kenneth claimed that he and Gloria were married in Bexar County as defined by Title 1 of the Texas Family Code. She then became known as "Gloria Hullaby." Both the Barringtons were aware of the marriage—Barbara having attended the wedding ceremony.

Kenneth further alleged that in the summer of 2020, Gloria came to him and said that Barbara needed help with issues related to her having surgery. Gloria planned to assist her and would stay with the Barringtons in El Paso. Barbara then picked up Gloria from the Hullaby's residence in Bexar County. While still in El Paso County, Gloria gave birth to A.D.B. Kenneth alleged he was not informed of Gloria's pregnancy throughout any time while she remained pregnant. Barbara then drove Gloria back to Bexar County "approximately a month after" the child was born. And still, no parties disclosed matters to him about the birth of A.D.B. He had no notice or knowledge of the termination hearing held on March 23, 2021, or of any ongoing proceedings.

Kenneth alleged he learned of A.D.B.'s birth in April 2021 from Gloria. She informed him that the Barringtons were asking him to effectuate a relinquishment of his rights. He was not provided with any documentation or made aware of pending litigation. Kenneth then retained an attorney to retrieve his child. He soon thereafter filed an answer in the El Paso suit requesting, among other things, that the termination suit be dismissed, and the child be returned to him.

6

Kenneth alleged that he and Gloria remained as husband and wife and neither had sought a dissolution of their marriage.

On May 25, 2021, the trial court ordered that Kenneth submit to paternity testing by May 28, 2021. On June 2, 2021, Gloria filed an entry of appearance through counsel. On the same day, Gloria filed an original answer with affirmative defenses, motion to abate, and motion to transfer venue. Five days later, Gloria filed a revocation of her affidavit for voluntary relinquishment of parental rights. The trial court entered an order appointing an attorney ad litem to represent A.D.B.

On January 31, 2022, the Barringtons filed a motion for adjudication of non-parentage based on Kenneth's failure to submit to paternity testing, as ordered.

## B. The Divorce and SAPCR Filed in Bexar County

But while the El Paso case was proceeding, Kenneth initiated his own litigation in Bexar County. On September 7, 2021, Kenneth filed an original petition for divorce and SAPCR in the 73rd District Court of Bexar County. With his petition, Kenneth requested extraordinary relief in the form of a writ of habeas corpus or other order attaching the body of the child, A.D.B. Alternatively, Kenneth requested an order excluding the Barringtons from possession or access to the child. In support of his request for that relief, Kenneth attached an affidavit stating that Gloria and the Barrington's had engaged in conduct that supported good cause for granting extraordinary relief. Kenneth's affidavit asserted that, without his knowledge, "the Barringtons fraudulently filed for adoption of [A.D.B.] in November 2020, in El Paso County, Texas as Cause No. 2020DCM5892 in the 383rd District Court of El Paso County, Texas." He also asserted that Gloria had filed an affidavit that fraudulently stated the child had no presumed father and she did not know the identity or location of the father of the child.

7

On the same day, Gloria filed an acceptance of service and answer in the divorce/SAPCR proceeding. On February 8, 2022, a Bexar County court entered an agreed final decree of divorce and order in a SAPCR, signed by Kenneth and Gloria, and their respective counsel, who are the same counsel appearing of record in the El Paso County case. The decree and order appointed Kenneth and Gloria as joint managing conservators of A.D.B., but it also changed his name to K.X.H. Both Kenneth and Gloria included the same residence address within their agreed finalized decree.

On March 31, 2022, Kenneth petitioned for writ of habeas corpus in Bexar County asking the court to issue a writ of attachment to recover possession of the child, K.X.H., from the Barringtons. He alleged that, because of a final order entered by a district court in Bexar County, he was entitled to the possession of K.X.H., who was being illegally restrained by the Barringtons. The writ petition also included an additional affidavit from Gloria. That affidavit alleged that she had first consented to the Barringtons as being in the care and possession of her son, K.X.H., but she had since rescinded that consent. She also asserted that the Barringtons had long sought to adopt a child and had pursued an adoption of her son through the execution of fraudulent documents. On April 4, 2022, the 73rd District Court of Bexar County issued an Order for Issuance of Writ of Attachment. The order directed the clerk of the court to immediately issue a writ of attachment commanding any sheriff or constable within the state of Texas to take the body of the child, K.X.H., and return such child to Kenneth.

**C. Recent Filings of Record in the 383rd District Court of El Paso County**

On April 25, 2022, Kenneth filed a second motion to dismiss and plea to the jurisdiction in the termination/adoption pending in the 383rd District Court of El Paso County. He argued the Bexar County District Court, a court with continuing and exclusive jurisdiction, had issued a

8

governing order detailing the conservatorship of the child. On April 28, 2022, an email from the 383rd District Court to all parties of record in the termination/adoption proceeding shared the trial court was arranging a UCCJEA conference with the Bexar County court and it would advise of the date and time under the statute.[4] The email further requested the presence of all parties for a Zoom hearing to be held that same day. As described below, the trial court at that hearing only ruled on an application for a retainer requested by the ad litem attorneys. The next day, the trial court entered an "Order Appointing Managing Conservators of a Child." The order appoints the Barringtons as joint managing conservators of A.D.B. The order further stated the trial court would consider the termination of the parental rights of the presumed father and the adoption of the child at a later time.

Kenneth filed this petition for writ of mandamus on May 4, 2022. Kenneth also filed a motion for emergency stay of all proceedings in the suit pending in the 383rd District Court of El Paso County, which we granted.

## II. ISSUES

Kenneth asserts the trial court erred in acting in this case once it learned of the Bexar County proceeding. He asserts that the Bexar County court has continuing, exclusive jurisdiction over the child subject of the underlying suit. Kenneth asks this court to issue a writ of mandamus directing the trial court to vacate orders entered after Kenneth filed his motion to dismiss and to

---

[4] The Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) encourages national uniformity in child custody disputes and addresses custody determinations when a child moves from one state to another. *See In re Dean*, 393 S.W.3d 741, 743 (Tex. 2012). Texas has adopted the UCCJEA as found in Chapter 152 of the Texas Family Code. Section 152.110(b) specifically allows a court of this state to communicate with the court in another state concerning jurisdictional issues. TEX.FAM.CODE ANN. § 152.110(b). Sections 152.201 to 152.210 address conflicting jurisdiction between court from different states. *Id.* §152.201-.210. By contrast, Chapter 155 of the Family Code addresses intra-state jurisdictional issues when more than one Texas court is asked to resolve SAPCR suits. *See Id.* § 155.001 et seq.

take no further actions in the case until it concedes jurisdiction.

## III. MANDAMUS STANDARD

Mandamus relief is appropriate only to correct a clear abuse of discretion or to compel the performance of a ministerial duty, and where the relator has no adequate remedy on appeal. *In re Reece*, 341 S.W.3d 360, 364 (Tex. 2011) (orig. proceeding); *In re J.M.G.*, 553 S.W.3d 137, 140 (Tex.App.--El Paso 2018, orig. proceeding). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law, or if it clearly fails to analyze the law correctly or apply the law correctly to the facts. *In re H.E.B. Grocery Co., L.P.*, 492 S.W.3d 300, 302-03 (Tex. 2016) (orig. proceeding) (per curiam). The burden is on the relator to show it is entitled to mandamus relief. *See In re Ford Motor Co.*, 165 S.W.3d 315, 317 (Tex. 2005) (orig. proceeding) (per curiam). The relator has the burden of providing this Court with a sufficient record to establish the right to mandamus relief. *Walker v. Packer*, 827 S.W.2d 833, 837 (Tex. 1992) (orig. proceeding).

Temporary orders issued by a Family Court are not subject to an interlocutory appeal under the Texas Family Code. *See* TEX.FAM.CODE ANN. § 105.001(e). But mandamus may be available to challenge a temporary order that deprives a parent of the physical possession of their child. *See In re Mata*, 212 S.W.3d 597, 603-04 (Tex.App.--Austin 2006, orig. proceeding) ("Because temporary orders in a suit affecting a parent-child relationship are not subject to interlocutory appeal under the family code and because there is a need to resolve issues related to child custody quickly, courts have held that mandamus is an appropriate vehicle to challenge a lack of jurisdiction in child custody matters."); *In re Aubin*, 29 S.W.3d 199, 202 (Tex.App.--Beaumont 2000, orig. proceeding) (mandamus is appropriate for order depriving parent of physical possession of her children). In these situations, a relator lacks a clear and adequate remedy at law,

10

satisfying that requirement for mandamus relief. *See Dancy v. Daggett*, 815 S.W.2d 548, 549 (Tex. 1991) (orig. proceeding) (per curiam) (stating mandamus relief is an appropriate remedy when the trial court's issuance of temporary orders not subject to interlocutory appeal). Given that the first element requiring that no adequate remedy at law be available, we next look to whether the record establishes a clear abuse of discretion by the trial court.

## IV. DISCUSSION

Kenneth contends the trial court erred in "refusing to concede jurisdiction of the subject matter of the child to the Bexar County court" and issued "an unlawful order conferring conservatorship status retroactively in an attempt to create jurisdiction." The crux of his argument is that the trial court lacks jurisdiction and erred in not "conceding" jurisdiction to Bexar County based on his filed motion. The record raises one critical problem with Kenneth's contention.

Kenneth raised the jurisdictional issue through a motion that has not been expressly ruled on. On April 25, 2022, he filed his "Second Motion to Dismiss/Plea to the Jurisdiction." We have no record that the motion has been set for hearing. And the transcript of the April 28, 2022, hearing confirms that the trial court intended only to hear a "Motion for Additional Amicus Fees" and a "Motion for Adjudication of Nonparentage" (that related to Gloria). The trial court only ruled on the amicus fee issue, and expressly declined to address the Motion for Adjudication of Nonparentage. The trial court also stated that it would rule on the jurisdictional issue, but wanted to contact the trial judge who handled the divorce proceedings in Bexar County. The court stated at several points in the hearing that it would hear Kenneth's jurisdictional challenge when it was set for hearing.[5] In effect, Kenneth now argues that his plea to the jurisdiction is self-executing in

---

[5] The hearing does contain colloquy between Kenneth's counsel and the court about some aspects of the jurisdictional argument. But none amounts to a formal ruling on Kenneth's motion.

that the trial court abused its discretion by not acceding to it without a hearing or further proceedings. The primary authority that Kenneth relies on—a decision by the Amarillo Court of Appeals—would not support a clear abuse of discretion without some actual ruling on a jurisdictional challenge. *See Matter of Marriage of Allen*, 593 S.W.2d 133 (Tex.App.--Amarillo 1979, no writ).

In the *Allen* case, Mother filed a suit affecting the parent-child relationship in Lubbock County but she did not seek a divorce, division of marital property, or permanent conservatorship orders. *Id.* at 135. A few days later, Father filed a divorce action in Floyd County in which he also sought establishment of conservatorship of the couple's children. *Id.* Father next filed a motion in Lubbock County to transfer Mother's case to Floyd County. *Id.* Mother then amended her petition to now seek a divorce and she filed a motion in Floyd County to abate or dismiss Father's suit. *Id.* The Lubbock County court overruled Father's motion to transfer and the Floyd County court overruled Mother's motion to abate or dismiss. *Id.* at 136. Final decrees of divorce were entered in both counties. *Id.* Mother appealed the divorce decree entered in Floyd County. *Id.* No appeal was taken on the Lubbock county decree. *Id.* Mother sought to invalidate the Floyd decree. *Id.* However, the court of appeals overruled mother's sole point of error and affirmed the Floyd decree. *Id.* at 138. In its holding, the court held that, even though the suit filed in Lubbock county was filed first, the Floyd County court acquired dominant jurisdiction over the divorce because it was the first suit filed in which all the requirements of the statute were satisfied. *Id.*

But unlike the parties in *Allen*, Kenneth made no request that the El Paso County trial court transfer the underlying case to Bexar County. Rather, he claims the court should have "conceded" jurisdiction to the Bexar County court. Kenneth's request to dismiss/plea to the jurisdiction has not been ruled on by the trial court. Because our record does not establish that the trial court has

12

yet ruled on Kenneth's jurisdictional plea and motion to dismiss, we conclude it would be premature for him to seek mandamus relief on a matter not yet ruled on. *See In re Tunad Enterprises, Inc.*, No. 05-18-01157-CV, 2018 WL 4959418, at *1 (Tex.App.--Dallas Oct. 15, 2018, orig. proceeding) ("Moreover, it is premature to seek a writ of mandamus without the trial court first ruling on the very matters upon which relief is sought."); *In re Elizondo*, No. 07-99-0142-CV, 1999 WL 285735, at *1 (Tex.App.--Amarillo May 5, 1999, orig. proceeding) (mem. op.) (same); *Diocese of Galveston-Houston v. Stone*, 892 S.W.2d 169, 178 (Tex.App.--Houston [14th Dist.] 1994, orig. proceeding) (holding requested mandamus relief on jurisdictional issue was premature where trial court had yet to rule on it); *Sharm, Inc. v. Euresti*, 883 S.W.2d 701, 702-03 (Tex.App.--Corpus Christi 1994, orig. proceeding) (holding jurisdictional issue was not ripe for mandamus where trial court had yet to rule on plea to the jurisdiction).

We express no opinion on the merits of the jurisdictional argument. Nor do we make any holding that would sanction the April 29th order. That order in substance reduces to writing the trial court's oral pronouncement that the Barrington's were managing conservators of A.D.B. on March 23, 2021. Kenneth suggests the purpose of the order was to provide a jurisdictional basis for the El Paso action. The record before us does not support that claim.

## V. CONCLUSION

We deny the petition for writ of mandamus.

JEFF ALLEY, Justice

June 28, 2022

Before Rodriguez, C.J., Palafox, and Alley, JJ.
Palafox, J., concurring and dissenting

13