Joe GRAY, Appellant,

v.

SAINT MATTHEWS CATHEDRAL
ENDOWMENT FUND, INC., et
al., Appellees.

No. 8401.

Court of Civil Appeals of Texas,
Texarkana.

Nov. 16, 1976.

Rehearing Denied Dec. 29, 1976.

Joe Gray, pro se.

Spencer C. Relyea, Worsham, Forsythe & Sampels, Dallas, for appellee Cathedral.

John L. Hill, Atty. Gen., State of Texas, Herman I. Little, Jr., Asst. Atty. Gen., Austin, for intervenor.

David R. Noteware, Dallas, for appellee Bank.

CORNELIUS, Justice.

This is an appeal from a judgment striking appellant's plea of intervention in litigation involving a trust for the benefit of the Saint Matthews Cathedral, an unincorporated voluntary religious association constituting a parish in the Diocese of Dallas of the Episcopal Church.

The financial history of the parish is of importance to the present action and will be summarized. From 1943 to 1963 certain funds and properties were given in trust to a "Cathedral Fund" for the benefit of the parish. The governing body of the church, the Vestry, is required by Canon Law to take charge of all endowments. Canon Law also authorizes the Vestry to organize a corporation, as an adjunct or instrumentality of the parish, to use in connection with the administration of the parish and its funds and properties. Pursuant to this authority, the Vestry established the Saint Matthews Episcopal Endowment Fund, Inc. and made it the recipient of those endowments previously held in the Cathedral Fund. The affairs of the corporation were to be conducted by a board of five trustees elected by the corporation for five year terms. Corporation funds accumulated. In 1968 the Vestry became in need of funds to meet parish operating expenses. The Vestry requested the trustees of Saint Matthews Episcopal Endowment Fund, Inc. to disburse portions of the trust income to meet those expenses, but they refused. The Vestry went into debt. In 1974, the Vestry, as members of the corporation, adopted amended articles of incorporation and by-laws. These amendments attempted to facilitate the distribution of the assets of the fund and to elect successor trustees who would administer the funds more in keeping with the desires of the Vestry. The incumbent trustees denied the validity of the amendments and of the election of the substitute trustees or successor trustees. This led to the institution of the original action in the names of the corporation and of Philip Prescott, a Vestryman against the corporate trustees. Following a plea in abatement by the defendant, each member of the Vestry and all of the successor trustees were joined as plaintiffs, and the attorney general was joined as a defendant. The plaintiffs in the original action sought a permanent injunction restraining the defendants from acting as trustees and also sought an order requiring redelivery of the endowment funds and properties to the Vestry and a declaratory judgment concerning the powers of the parties to manage and administer the endowments. Joe Gray, the appellant in the present action, attempted to intervene in his capacity as a parishioner, as a recently elected successor trustee, and as a former member of the Vestry. His intervention was opposed by the corporate trustees. The intervention sought substantially the same relief as was originally sought by the plaintiffs. Before matters proceeded further, the original plaintiffs and the aligned defendants reached a settlement of the controversy between them. As a result of the settlement, the amended articles of incorporation and by-laws, as well as the election of the successor trustees, were rescinded. The endowments were left under the control of the corporation, and provisions were made for the distribution of trust income and for the annual election of trustees nominated by the Vestry. The appellant did not assent to this settlement and thereupon filed a second amended petition in intervention. All of the parties to the settlement were named as defendants. After a hearing the trial court entered judgment striking appellant's intervention and dismissing the case with prejudice.

The sole question for determination is the standing of the appellant to maintain his intervention. He claims to have such standing because he is a beneficiary or a person "affected by or having an active interest in the administration of the trust . . . ." as provided by Tex.Rev.Civ.Stat. Ann. art. 7425b–24 C and art. 7425b–39 (1960), and as required by the common law rules relating to charitable trusts. He argues that he has such an active interest because (1) he is a member or parishioner of the specific religious organization for whose benefit the trust was created, (2) he was a successor trustee under the amended by-laws which were rescinded by the settlement, and (3) he was a member of the Vestry when certain loans were contracted for the benefit of the parish, and thus has a contingent liability if the trust funds are withheld and such loans are not repaid. Appellees contend that appellant has no standing to intervene because the attorney general is the proper party to seek enforcement of the charitable trust and that, in any event, appellant's interests have been adequately represented by the attorney general and the Vestry.

▆▆▆ Persons having no special interest different from that of the general public have no standing to institute or maintain a suit to enforce a public charitable trust. *Coffee v. William Marsh Rice University,* 403 S.W.2d 340 (Tex.1966); Annot., 62 A.L.R. 891 (1929); Annot., 124 A.L.R. 1238 (1940); 3 Scott On Trusts, Charitable Trusts, Sec. 391, p. 2054. The attorney general is the representative of the public and is the proper party to maintain such a suit. This was the rule recognized at common law, and it has been embodied in Tex. Rev.Civ.Stat.Ann. art. 4412a (1976), art. 7425b–24 C and art. 7425b–39 (1960). Sound reasons support the rule. Where a charity is for the benefit of the public at large or a considerable portion of it, and the language of its creation is such that no particular individuals can be pointed out as

the objects to be benefited by it, the official representative of the public is the only party capable of vindicating the public's rights in connection with such charity. *Cannon v. Stephens,* 18 Del.Ch. 276, 159 A. 234. And, if members of the public at large could sue in such cases, the charities and their trustees could be subject to undue harassment. *Coffee v. William Marsh Rice University,* supra. But notwithstanding that a trust may be charitable in character and may look generally to the benefit of the public, yet if by the terms of the instrument creating the trust it is possible to ascertain definite persons or groups as beneficiaries, they have such a special or active interest in the trust as justifies a standing to maintain an action to enforce it. *Lokey v. Texas Methodist Foundation,* 479 S.W.2d 260 (Tex. 1972); Annot., 124 A.L.R. 1240 (1940). The foregoing proposition is almost universally accepted. See Restatement of Trusts 2d, Sec. 391 (1959), and especially comments c and d; 3 Scott on Trusts, Charitable Trusts, Sec. 391, p. 2055; Bogert, The Law of Trusts and Trustees, § 414, p. 344 (1964); 15 Am.Jur.2d, Charities, Sec. 124, p. 131; 14 C.J.S. Charities § 58, p. 527; Annot., 124 A.L.R. 1237 (1940); Annot., 62 A.L.R. 881 (1929). And it has been recognized by a number of Texas cases. See for example, *Tunstall v. Wormley,* 54 Tex. 476 (1881); *Pierce v. Weaver,* 65 Tex. 44 (1885); *Woods v. Bell,* 195 S.W. 902 (Tex.Civ.App. Beaumont 1917, writ ref'd); *Inglish v. Johnson,* 42 Tex.Civ.App. 118, 95 S.W. 558 (1906, writ ref'd); *Allred v. Beggs,* 125 Tex. 584, 84 S.W.2d 223 (1935). Our Supreme Court reviewed the above cited Texas cases and quoted from several of them in *Coffee v. William Marsh Rice University,* supra. In reality, the standing of individuals to enforce a charitable trust depends upon whether the trust is a *public* or a *private* charity. Some writers contend that any charity is necessarily "public", and therefore there can be no private charity,[1] but that view is based upon a technical definition of the term charity. The confusion of

---

1. Bogert, The Law of Trusts and Trustees, § 362, p. 13 (1964); *Boyd v. Frost Nat. Bank,* 145 Tex. 206, 196 S.W.2d 497 (1946).

terms is partly due to the fact that, as concerns the rule against perpetuities, or for the purposes of taxation, a trust is considered of a "public charitable nature" even if it is for the benefit of a particular class or group of persons or institutions, so long as its general purpose is to relieve poverty, advance education or religion, or promote other humanitarian ends which indirectly benefit the public generally. *Powers v. First Nat. Bank of Corsicana*, 138 Tex. 604, 161 S.W.2d 273 (1942). But for the purpose of judging a person's standing to sue, there is a distinction between public charitable trusts and private charitable trusts. Our Supreme Court recognized the distinction in *Allred v. Beggs*, supra, where the Court said:

> "A charity for the orphan children of a state is a public charity, but a charity for the orphan children of deceased Masons, Odd Fellows, Baptists, Catholics, etc., of a state is not a public charity."

Even in *Carroll v. City of Beaumont*, 18 S.W.2d 813 (Tex.Civ.App. Beaumont 1929, writ ref'd), a case relied upon heavily by appellees, the Court said:

> ". . . it must be borne in mind that the rule applicable to a *public* charitable trust does not apply to a *private* charity. Where a charitable gift is for the benefit of some particular person, corporation, or class of persons, as distinguished from the public generally, then that would be a private charity, and the beneficiary or beneficiaries, of course, could enforce the execution of the trust."

A classic example of the application of that principle is cited by Bogert in his work on trusts:

> "If a trust exists for the benefit of a definite local church, . . . the members and pewholders of that church have a rather certain, definite interest in the enforcement of the trust. While the benefits will go to all the community . . . and also to the general public, it is practically sure that the members of the church will all of them obtain some advantage. It is therefore not surprising to find that a number of courts have allowed a church member or pewholder in such a case to sue to enforce the charity." Bogert, The Law of Trusts and Trustees, § 414, p. 344 (1964).

The rule enunciated by the above quoted authorities is consistent with the reasons underlying the general rule relating to public charitable trusts, because the problems of identification of beneficiaries and of undue harassment are not present when the class of persons to be benefited is a small, easily identifiable group, as distinguished from the public generally. It is also consistent with the modern trend of the law as it relates to "standing". See 25 Baylor L.Rev., Notes, 163 (1973).

■ Saint Matthews Cathedral has approximately 1300 parishioners. Appellant is a parishioner and he is also a former Vestryman who remains contingently liable for certain debts of the parish. In addition, he was one of the successor trustees of the trust under the amended articles and by-laws which were rescinded by the settlement of which he complains. Clearly he has such an active or special interest in the enforcement and proper administration of the trust as justifies his intervention in the existing litigation.

■ Appellees maintain that appellant must have an interest different from *the other parishioners* in order to have standing, but that is not the requirement. He must have an interest *different from that of the public at large.* He need not have an interest different from the other parishioners or pewholders.

It is important to note also that the appellant did not initiate this action but merely sought to intervene in existing litigation, a fact which renders the question of harassment irrelevant. Moreover, the attorney general is a party, thus removing any doubt as to the proper representation of the general public's interest, however remote that interest may be.

It follows that appellant, as a parishioner of the Saint Matthews Cathedral, had standing to intervene in the lawsuit in his own behalf and as the representative of the

parishioners as a class. It was therefore error to strike his intervention unless his right thereto was defeated by some other circumstance.

 Appellees argue that, even if appellant had standing to intervene in the litigation, the Vestry of the parish is charged by Canon Law with the duty of representing the parishioners' rights with respect to church funds and properties, and as the Vestry was a party to the suit, the courts will not interfere with its representation of those interests. We do not agree. The general rule is that the courts will not intervene so far as the internal affairs or purely ecclesiastical or spiritual features of a church or religious society are concerned. 50 Tex.Jur.2d, Religion, etc., Sec. 20, p. 82 (1969); 66 Am.Jur.2d, Religious Societies, Sec. 45, p. 797. But the civil courts will not hesitate to intervene to see that property rights are protected and administered in accordance with the civil and the Canon Law. *Jones v. Hilliard,* 63 S.W.2d 909 (Tex. Civ.App. Dallas 1933, no writ); 50 Tex. Jur.2d, Religion, etc., Sec. 20, p. 83 (1969); 66 Am.Jur.2d, Religious Societies, Sec. 45, p. 798. In this case the position taken by the Vestry in the settlement was contrary to appellant's allegations as to what was required by the terms of the various trust indentures and Canon Law. To deny appellant the standing to seek enforcement of those requirements merely because the Vestry is a party would be contrary to the principles above noted. And, although the attorney general is a party, his representation of the remote interest of the public at large cannot be considered as representation of the special interests of appellant and the other parishioners. Furthermore, it is settled that the attorney general is not a *preclusive* party in actions such as that involved here. See *Lokey v. Texas Methodist Foundation,* supra.

For the reasons stated, we hold that it was error for the trial court to strike appellant's intervention. The judgment is therefore reversed and the cause is remanded with instructions to reinstate the intervention for trial on the merits of appellant's claims.

IT IS SO ORDERED.