ACCEPTED
06-15-00075-CV
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
12/9/2015 4:37:31 PM
DEBBIE AUTREY
CLERK

**No. 06-15-00075**

_____

IN THE COURT OF APPEALS
FOR THE SIXTH JUDICIAL DISTRICT
TEXARKANA, TEXAS

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
12/10/2015 8:58:00 AM
DEBBIE AUTREY
Clerk

_____

**GARY DAVID BRAY AND TEXAS DIVISION, SONS OF CONFEDERATE VETERANS, INC., AND DAVID STEVEN LITTLEFIELD**
*Appellants,*

**V.**

**GREGORY L. FENVES, IN HIS CAPACITY AS THE PRESIDENT OF THE UNIVERSITY OF TEXAS AT AUSTIN**
*Appellee.*

_____

On Appeal from the 53rd Judicial District Court of Travis County, Texas
Cause No. D-1-GN -15-003330

_____

**BRIEF OF APPELLEE**

_____

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil
Litigation

ANGELA COLMENERO
Division Chief

MARIEL T. PURYEAR
Texas Bar No. 24078098
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 475-4651 (PHONE)
(512) 320-0667 (FAX)

ATTORNEYS FOR APPELLEE
ORAL ARGUMENT REQUESTED

**IDENTITY OF PARTIES AND COUNSEL**

Pursuant to Rule 38.1(a) of the Texas Rules of Appellate Procedure, Appellee provides this Court with the following list of parties and the names and addresses of all trial and appellate counsel:

*Appellants-Plaintiffs:*

Gary David Bray and Texas Division, Sons of Confederate Veterans, Inc., and David Steven Littlefield

*Trial and Appellate Counsel for Appellants-Plaintiffs:*

Kirk David Lyons, Attorney in Charge
P.O. Box 1235
Black Mountain, N.C. 28711
Tel. (828) 669-5189
Fax (828) 669-5191
kdl@slrc-csa.org

C.L. Ray, Co-Counsel
604 Beardsley Lane, Suite 100
Austin, Texas 78746
Tex. (512) 328-9238
Fax (512) 857-0606
Clray4523@hotmail.com

*Appellee-Defendant*

Gregory L. Fenves, President of the University of Texas at Austin

*Trial and Appellate Counsel for Appellee-Defendant*

Mariel T. Puryear
Assistant Attorney General
Office of the Attorney General
General Litigation Division
P. O. Box 12548 – Capitol Station
Austin, Texas 78711-2548
(512) 475-4651
(512) 320-0220 (fax)
mariel.puryear@texasattorneygeneral.gov

# TABLE OF CONTENTS

BRIEF OF APPELLEE.............................................................................................................I

IDENTITY OF PARTIES AND COUNSEL ......................................................................II

TABLE OF CONTENTS......................................................................................................III

TABLE OF AUTHORITIES ............................................................................................. IV

STATEMENT OF THE CASE.........................................................................................VII

STATEMENT REGARDING ORAL ARGUMENT................................................... VIII

ISSUES PRESENTED.................................................................................................... VIII

BRIEF OF APPELLEE....................................................................................................... 1

I.     STATEMENT OF THE FACTS ............................................................................. 2

II.    SUMMARY OF THE ARGUMENT ...................................................................... 3

III.   ARGUMENT AND AUTHORITIES ..................................................................... 4

   A.  Standard of Review ........................................................................................... 4

   B.  The Trial Court Properly Ruled That The Appellants Do Not Have Standing. ................... 5

      a.   No Individual Standing ................................................................................ 5

         i.   No Tax-Payer Standing ........................................................................ 7

      b.   No Associational Standing........................................................................... 9

      c.   Appellants have no standing to enforce a public charitable trust. .............................. 10

   C.  Even If This Court Determined The Appellants Had Standing, President Fenves Did Not Violate The Terms Of The Littlefield Trust. .................................................... 14

   D.  Texas Government Code § 2166.5011 Is Not Applicable To The Present Case. .............. 15

      i.    Jefferson Davis.................................................................................... 17

      ii.   Woodrow Wilson ................................................................................ 19

      iii.  Appellants' Argument Regarding the Board of Regents Rules............................. 21

PRAYER............................................................................................................................. 22

CERTIFICATE OF SERVICE ....................................................................................... 23

CERTIFICATE OF COMPLIANCE ............................................................................. 24

**Cases**

*Alexander v. City of Greenville*,
  585 S.W.2d 333 (Tex. App—Dallas 1979).............................................................7

*Allen v. Wright*,
  468 U.S. 737 (1984) ............................................................................................6

*Bland Indep. Sch. Dist. v. Blue*,
  34 S.W.3d 547 (Tex. 2000) ........................................................................ 5, 7, 8

*Brown v. Todd*,
  53 S.W.3d 297 (Tex. 2001) ................................................................................7

*Carroll v. City of Beaumont,*
  18 S.W.2d 813 (Tex. Civ. App.—Beaumont 1929, writ refused) ......................13

*Case v. Clarke*,
  5 Fed. Case 254, 5 Mason 70 (1828)..................................................................18

*City of El Paso v. Heinrich*,
  284 S.W.3d 366 (Tex. 2009) .............................................................................21

*City of Houston v. Rhule*,
  417 S.W.3d 440 (Tex. 2013) ..............................................................................4

*Coffee v. William Marsh Rice University*,
  403 S.W.2d 340 (Tex. 1966) .............................................................................11

*County of Cameron v. Brown*,
  80 S.W.3d 549 (Tex. 2002) ................................................................................5

*Daimler Chrysler Corp. v. Inman*,
  252 S.W.3d 299 (Tex. 2008) ..............................................................................5

*Gamboa v. Gamboa*,
  383 S.W.3d 263 (Tex. App.—San Antonio, 2012)............................................13

*Gray v. St. Matthews Cathedral Endowment Fund, Inc.*,
  544 S.W.2d 488 (Tex. App.—Texarkana 1976, writ ref'd n.r.e.)........... 11, 12, 13

*Heckman v. Williamson County*,
  369 S.W.3d 137 (Tex. 2012) ...........................................................................5, 6

*Hunt v. Washington State Apple Advertising Comm'n*,
432 U.S. 333 (1977) ................................................................10

*Lightfoot v. Poindexter*,
199 S.W. 1152 (Tex. Civ. App.—Austin 1917, writ ref'd) ................................12

*Meyer v. Holle*,
83 Tex. 623, 19 S.W.154 (1892) ........................................................11

*Morris v. Gilmer*,
129 U.S. 315 (1889) ................................................................18

*Nacol v. State*,
792 S.W.2d 810, (Tex. App.—Houston [14th Dist.] 1991, writ
denied) ................................................................12

*Najvar v. Vasek*,
564 S.W.2d 202 (Tex. Civ. App—Corpus Christi, 1978)................................14

*Peek v. Equip. Serv. Co. of San Antonio*,
779 S.W.2d 802 (Tex. 1989) ........................................................5

*Reed v. Prince*,
194 S.W.3d 101 (Tex. App.—Texarkana 2006, pet. denied)................................5

*Ritchie v. City of Fort Worth*,
730 S.W.2d 448 (Tex. App.—Fort Worth, 1987) ........................................7

*South Tex. Water Auth. v. Lomas*,
223 S.W.3d 304 (Tex. 2007) ........................................................6

*Tex. Ass'n of Bus. v. Tex. Air Control Bd.*,
852 S.W.2d 440 (Tex. 1993) ........................................ 6, 9, 10, 21

*Tex. Dep't of Parks and Wildlife v. Miranda*,
133 S.W.3d 217 (Tex. 2004) ........................................................5

*Tex. Dep't of Transp. V. City of Sunset Valley*,
146 S.W.3d 637 (Tex. 2004) ........................................................17

*Tex. Natural Res. Conservation Comm'n v. IT-Davy,* 74 S.W.3d 849
(Tex. 2002) ................................................................6

*Warth v. Seldin*,
422 U.S. 490 (1975) ................................................................6

*Whisenhunt v. Lippincott*, 416 S.W.3d 689 (Tex. App.—Texarkana 2015, no pet.) ..................................................................................21

**Statutes**

Tex. Civ. Prac. & Rem. Code Ann. § 37.002 (West 2015) .......................................6

Tex. Gov't Code Ann. § 2166.5011.........................................................................20

Tex. Gov't Code Ann. § 2166.5011(a) ...................................................................16

Tex. Gov't Code Ann. § 2166.5011(c) ...................................................................20

Tex. Gov't Code Ann. § 2166.5011(a)(2) ................................................... 17, 19, 20

Tex. Gov't Code Ann. § 311.026.............................................................................16

U.S. Const. amend. XIV § 1 ...................................................................................19

**Other Authorities**

*Black's Law Dictionary* (10th ed. 2014)................................................................17

*The Fate of Texas: The Civil War and the Lone Star State*, ed. Charles D. Grear (Fayetteville, AR: University of Arkansas Press, 2008), 169 ...................................................................................................................20

**Rules**

*Practice Before the Court*, TEX. JUD. BRANCH (Dec. 9, 2015), http://www.txcourts.gov/6thcoa/practice-before-the-court.aspx. .........................1

Tex. R. App. Pro. 33.1 .............................................................................................21

# STATEMENT OF THE CASE

*Nature of the Case:* Plaintiffs sought to enjoin the University of Texas at Austin from relocating two statues on the campus of the university—one of Jefferson Davis and one of Woodrow Wilson—alleging that their removal violated the Texas Government Code and the terms of the will of Major George Washington Littlefield, who donated the funds for the construction of the statues.

*Trial Court:* Cause No. D-1-GN-15-003330, in the 53rd Judicial District Court, Travis County, Texas

*Trial Court Disposition:* Defendant Gregory L. Fenves' Plea to the Jurisdiction (CR 57–67) was granted following a hearing on August 27, 2015 (CR 268), and the case dismissed. Plaintiffs Gary David Bray and Texas Division, Sons of Confederate Veterans, Inc., and David Steven Littlefield then filed their Notice of Appeal (CR 274).

## STATEMENT REGARDING ORAL ARGUMENT

Appellee President Fenves believes that the trial court's decisions in this case were based upon well-established principles of law and does not believe oral argument is necessary. However, if this Court should grant Appellants' request for oral argument, Appellee President Fenves requests that he be permitted equal time to argue the merits of the appeal.

## ISSUES PRESENTED

I. Whether the trial court properly ruled that the Appellants do not have standing because they have no particularized injury nor do they have taxpayer standing or associational standing.

II. Whether President Fenves, as trustee for the Littlefield trust—a public charitable trust—meets the terms of the trust by displaying the statues at the Briscoe Center for American History.

III. Whether the provisions of Texas Government Code §§ 2166.501 and 2166.5011 are inapplicable to this case because their requirements only apply to statues that honor citizens of Texas.

No. 06-15-00075

_____

IN THE COURT OF APPEALS
FOR THE SIXTH JUDICIAL DISTRICT
TEXARKANA, TEXAS

_____

**GARY DAVID BRAY AND TEXAS DIVISION, SONS OF CONFEDERATE VETERANS, INC., AND DAVID STEVEN LITTLEFIELD**
*Appellants,*

**V.**

**GREGORY L FENVES, IN HIS CAPACITY AS THE PRESIDENT OF THE UNIVERSITY OF TEXAS AT AUSTIN**
*Appellee.*

_____

On Appeal from the 53rd Judicial District Court of Travis County, Texas
Cause No. D-1-GN -15-003330

_____

**BRIEF OF APPELLEE[1]**

_____

---

[1] Appellee's brief responds in all respects to Appellants' brief received by this Court on November 6, 2015. Appellants' (pending) Motion for Leave to File Amended Brief is OPPOSED by Appellant because the motion is tardy, and would occasion unjustified hardship for Appellee. By motion, Appellants state that "[c]ounsel for appellants have conferred with counsel for appellee on this motion." Appellants' Motion for Leave at 3. In fact, this consisted of a phone call from counsel on December 7, 2015—just two days prior to Appellee's filing deadline—notifying Appellee for the first time that Appellants intended to file a motion seeking leave to amend their brief. By the time of this December 7 phone call, Appellee's brief was nearly complete, in time-consuming reliance upon the Appellants' brief filed four weeks earlier. Appellee further notes that Appellants' tardy motion to unconditionally amend their arguments disregards this Court's goal to "process all appeals promptly," which governs this Court's policy to disfavor mere extensions of briefing deadlines (much less permit wholesale changes to appeal arguments by all parties). *See Practice Before the Court*, TEX. JUD. BRANCH (Dec. 9, 2015), http://www.txcourts.gov/6thcoa/practice-before-the-court.aspx. For these reasons, Appellee requests this Court DENY Appellants' Motion to File Amended Brief. However, if Appellants are granted leave to amend their brief, Appellee requests an opportunity to respond to Appellants' Amended Brief.

1

President Gregory L. Fenves ("President Fenves") files this Brief requesting this Court affirm the order of the lower court dismissing this lawsuit, and shows as follows:

## I.    STATEMENT OF THE FACTS[2]

The statues made the subject of this suit were constructed with funds donated as part of the final will and testament of Major George Washington Littlefield ("Major Littlefield") to the University of Texas at Austin. CR 74–75.  Until the hearing on Appellants' Temporary Injunction and President Fenves's Plea to the Jurisdiction, the statues resided on the South Mall of the UT Austin campus.  CR 109.

In June 2015, following a student-led petition for the removal of the statues, President Fenves announced the formation of the Task Force on Historical Representation of Statuary ("Task Force").  CR 114.  The Task Force was charged with "identifying and evaluating options for dealing with controversial statues that line the university's Main Mall."  CR 114.  The Task Force's efforts culminated in a Report which discussed the history of the statues as well as the five options considered by the Task Force.  CR 107–140.  After submission of the Report to President Fenves, he announced his decision that the best location for the Jefferson

---

[2] References to the Clerk's Record will be cited as "CR ___." References to the Reporter's Record will be cited as "RR 2:___" for volume 2, and "RR 3___" for volume 3.

Davis statue would be the Briscoe Center for American History, where Davis's unique role in the history of the American South could be "best explained and understood through an educational exhibit." CR 141. He further announced that, "to preserve the symmetry of the Main Mall," the statue of Woodrow Wilson, which stood opposite of Davis, would be relocated to an as-yet undetermined "appropriate exterior location on campus." CR 142.

Following this announcement, Appellants Gary David Bray ("Bray") and Texas Division, Sons of Confederate Veterans ("SCV") and David Steven Littlefield ("Littlefield," and collectively with Bray and SCV, "Appellants") filed suit against President Fenves, in his Official Capacity as President of The University of Texas at Austin, seeking to enjoin the University from removing the statues, as well as declarations under the Uniform Declaratory Judgments Act that removal would violate several provisions of the Texas Government Code. CR 33–34.

## II.   SUMMARY OF THE ARGUMENT

Appellants are unable to establish that they have standing to sue. They can show no particularized injury to set themselves apart from the general public, and do not meet the exception for taxpayer standing—therefore they cannot demonstrate individual standing to sue. Nor can they show associational standing because none of the individual members of the Sons of Confederate Veterans would have standing to sue in their own right. Also, the donation of $250,000 in Major Littlefield's trust

3

constitutes a public charitable trust, and Appellants have no standing to enforce a public charitable trust.

Further, even if Appellants were able to establish standing to sue, President Fenves, as a trustee of Major Littlefield's trust (in his position of President of the University of Texas) has not violated the terms of Major Littlefield's trust; the trust designates that the statues should be displayed in a place of prominence, and the Appellants as well as President Fenves agree that the Briscoe Center for American History is a place of prominence.

Finally, because Texas Government Code section 2166.5011 strictly defines "monument or memorial" as a "statue . . . that . . . honors a *citizen of this state*[,]" and neither Jefferson Davis nor Woodrow Wilson were citizens of Texas, statues of both men can be removed, relocated, or altered without implication of the requirements of section 2166.5011.

## III. ARGUMENT AND AUTHORITIES

### A. STANDARD OF REVIEW

An appellate court reviews a trial court's ruling on a plea to the jurisdiction *de novo*. *City of Houston v. Rhule*, 417 S.W.3d 440, 441 (Tex. 2013). In the appeal of a case involving a challenge to the existence of jurisdictional facts, the appellate court must consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised. *See Tex. Dep't of Parks and Wildlife v.*

4

*Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554–55 (Tex. 2000).

If the pleadings "affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend." *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002) (citing to *Peek v. Equip. Serv. Co. of San Antonio*, 779 S.W.2d 802, 804–05 (Tex. 1989)); *see also Reed v. Prince*, 194 S.W.3d 101, 104–05 (Tex. App.—Texarkana 2006, pet. denied) (holding that where the plaintiff had affirmatively negated the trial court's jurisdiction over his claims, the trial court "properly sustained the [defendant's] plea to the jurisdiction without allowing [the plaintiff] an opportunity to amend").

## B. THE TRIAL COURT PROPERLY RULED THAT THE APPELLANTS DO NOT HAVE STANDING.

Appellants assert that they have either individual standing, tax-payer standing, associational standing, or standing to sue under the Texas Constitution. Each of the Appellants' standing arguments fails for the following reasons.

### a. No Individual Standing

In Texas, in order for a plaintiff to have individual standing, there must be a concrete injury to the plaintiff and a real controversy between the parties that will be resolved by the court. *Heckman v. Williamson County*, 369 S.W.3d 137, 154 (Tex. 2012) (citing *Daimler Chrysler Corp. v. Inman*, 252 S.W.3d 299, 304 (Tex. 2008)).

5

This test mirrors that of the federal test for Article III standing, in which "[a] plaintiff must allege [1] *personal injury* [2] *fairly traceable* to the defendant's allegedly unlawful conduct and [3] *likely to be redressed* by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984) (emphasis added).

Standing requires that the plaintiff be "*personally* injured—he must plead facts demonstrating that he, himself (rather than a third party or *the public at large*), suffered the injury." *Heckman*, 369 S.W.3d at 155 (emphasis added) (citing *South Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 307 (Tex. 2007)). "[W]hen the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). It is the plaintiff's burden to plead facts that affirmatively demonstrate the court's jurisdiction to hear their claim. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993).

Here, Appellants here have failed to plead facts affirmatively demonstrating the court's jurisdiction. The UDJA is a remedial statue and its express purpose is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations[.]" Tex. Civ. Prac. & Rem. Code Ann. § 37.002; *Tex. Natural Res. Conservation Comm'n v. IT-Davy,* 74 S.W.3d 849, 855 (Tex. 2002). However, there has been no showing that Appellants have any standing to assert a declaration of their individual rights, distinct from the public at large,

concerning the subject matter of this lawsuit. Appellants have not, and cannot, allege facts that sufficiently distinguish them from the general public as to the damage alleged. *See Brown v. Todd*, 53 S.W.3d 297, 302 (Tex. 2001) ("Our decisions have always required a plaintiff to allege some injury distinct from that sustained by the public at large."); *Ritchie v. City of Fort Worth*, 730 S.W.2d 448, 450 (Tex. App.—Fort Worth, 1987); *Alexander v. City of Greenville*, 585 S.W.2d 333 (Tex. App.—Dallas 1979).

Appellants have alleged that their particularized injury is the removal of the statues. Appellants' Brief at 24. Appellants fail to demonstrate, however, how this injury (if it is in fact an injury) is personal to them, and distinct from the public at large. *See Todd*, 52 S.W.3d at 302. Their "identity as . . . descendant[s] of Confederate veterans . . . and their public affirmation of the values of the military service of their ancestors in the Civil War" do not make the removal of the statues any more personal or injurious to them than to any other citizen of the state. Appellants' Brief at 23. As such, Appellants have not pleaded, and cannot prove that relocation of the statues is in any way working a particularized injury to them.

### i. No Tax-Payer Standing

In Texas, there is a long-standing exception to the general rule of having to show a particularized injury. *See Bland*, 34 S.W.3d at 556. This exception bestows

standing on a taxpayer to "enjoin the illegal expenditure of public funds, even without showing a distinct injury." *Id.*

Appellants assert that, "[e]ven if the individual plaintiffs do not have standing under the general rule for individual standing because they have not suffered a particularized injury, individual plaintiffs have standing under the [taxpayer] exception." Appellants' Brief at 26.

While the individual defendants Bray and Littlefield are likely able to demonstrate their status as taxpayers (although Littlefield no longer lives in the state and presumably does not pay taxes in the state), they cannot demonstrate any "illegal expenditure of public funds." *Bland*, 34 S.W.3d at 556. The removal of the statues does not violate any laws, as President Fenves—acting as the President of the University of Texas at Austin, and therefore one of the trustees of Major Littlefield's trust—had full authority to remove, relocate, or alter the statues in question. *See* CR 74–75 (identifying "*the person who occupies the position of President* of the University of Texas" as a trustee and member of the committee overseeing the construction of the statues in question, and giving authority to said committee "to change [the arrangement given in the will] or the design suggested if they wish, *giving prominence[3] however to the statues of the men named*"). Under the express

---

[3] Appellants incorrectly state that "Maj. Littlefield's express and most significant condition to his Bequest, the monuments, and especially the Jefferson Davis monument, were to be given a place of prominence on the *South Mall* of the Campus." Appellant's Brief at 28 (emphasis added). However, the only mention of a specific location—"the south entrance to the campus of the

8

terms of Major Littlefield's trust, the President of the University is authorized to change the location of the statues, as long as they are given prominence wherever they are located. CR 74–75. Since Appellants do not plead facts showing any illegal expenditure of public funds, they do not have taxpayer standing.

### b. No Associational Standing

Alternatively, SCV alleges that it has associational standing. Appellants suggest that there are two tests used by the Texas Supreme Court to evaluate whether an association or organization has standing to sue, and that the wrong test was used in the trial court to evaluate whether SCV had associational standing. Appellants' Brief at 19. Appellants rely on *Texas Association of Business v. Texas Air Control Board* in support of their contention. Appellants' Brief at 19. However, the very test relied upon in President Fenves's Plea in the trial court is the only test relied upon by the Court in *Texas Association of Business*: "an association has standing to sue on behalf of its members when '(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Compare Tex. Ass'n of Bus.*, 852 S.W.2d 447 (quoting *Hunt v. Washington State Apple Adver.*

---

University of Texas"—is in the precatory language, on page three of Major Littlefield's will (CR 211), which appears before Major Littlefield's authorization to "change [the arrangement] or the design . . . if [the committee] wish[es.]" There is no requirement that the statues' place of prominence be "on the South Mall of the campus."

*Comm'n*, 432 U.S. 333, 343 (1977)), *with* CR 61 (Defendant's Original Answer and Plea to the Jurisdiction stating the *Texas Association of Business* test for associational standing).

When this test is applied to the present case, SCV fails to meet the first requirement for associational standing. As explained above, there is nothing to suggest that any of the individual members would have standing to sue in their own right, as none can demonstrate an individual injury in fact. *See supra* II(B)(a). That members of SCV have made public their "affirmation of the values of the military service of their ancestors in the Civil War" does not make the purported injury—the relocation of the statues—any more particularized to them than to any other member of the general public. Appellants' Brief at 23. For this reason, SCV cannot meet the first prong of the associational standing test and therefore does not have associational standing to sue.

### c. Appellants have no standing to enforce a public charitable trust.

Appellants assert a fourth possible means of achieving standing, through the Texas Constitution's guarantee of open access to the court. Appellants' Brief at 29. Appellants argue that, by "seek[ing] enforcement of the express and common law terms of the Littlefield Bequest," as well as the "common law doctrines of Election of Benefits and Promissory Estoppel" they have standing under the Texas Constitution. Appellants' Brief at 29–30. The Open Courts doctrine, however, is

not a viable alternative to the requisite standing to sue. Further, whether they're seeking enforcement of the express terms of the will, or the common law doctrines of "election of benefits and promissory estoppel," it is well-settled that "[p]ersons having no special interest different from that of the general public have no standing to institute or maintain a suit to enforce a public charitable trust." *Gray v. St. Matthews Cathedral Endowment Fund, Inc.*, 544 S.W.2d 488, 490 (Tex. App.— Texarkana 1976, writ ref'd n.r.e.) (citing *Coffee v. William Marsh Rice University*, 403 S.W.2d 340 (Tex. 1966)).

Pursuant to Chapter 123 of the Texas Property Code, Major Littlefield's testamentary gift to UT for the commission of the statues constitutes a charitable trust.[4] Appellants assert that Major Littlefield's gift to the University cannot be construed as a charitable trust because the Property Code, defining "charitable trust," was not enacted until 1983, and Major Littlefield's will was executed in 1918. Appellant's Brief at 36–37. The provisions of the Property Code dealing with charitable trusts, however, are merely codification of the long-standing common law recognition of charitable trusts. The Texas Supreme Court has interpreted the viability of charitable trusts in opinions dating back to 1892. *See, e.g.*, *Meyer v. Holle*, 83 Tex. 623, 19 S.W.154 (1892). Further, courts of appeals have determined

---

[4] Specifically, § 123.001(2) defines charitable trusts to include a "testamentary gift to a charitable entity." Under § 123.001(1) a charitable entity means an "entity organized for . . . educational . . . purposes," which would include public universities like The University of Texas at Austin.

11

gifts to universities to be charitable trusts even prior to the execution of Major Littlefield's will. *See Lightfoot v. Poindexter*, 199 S.W. 1152, 1167 (Tex. Civ. App.—Austin 1917, writ ref'd) (holding a gift to be a "charity" because "it is made for the purpose of giving education . . .[,] the manner in which this purpose shall be carried out is specifically stated in the will" and the will provides who the trustee and beneficiaries are). As such, even using the law as it existed at the time Major Littlefield's will was executed, the bequest to the University should still be construed as a charitable trust.

The Appellants do not, as members of the general public without any special interest in the terms of the trust, have standing to enforce the provisions of the trust. "Where a charity is for the benefit of the public at large or a considerable portion of it, and the language of its creation is such that no particular individuals can be pointed out as the objects to be benefited by it, the official representative of the public is the only party capable of vindicating the public's rights in connection with such charity." *Gray*, 544 S.W.2d at 490 (emphasis added); *see also Nacol v. State*, 792 S.W.2d 810, (Tex. App.—Houston [14th Dist.] 1991, writ denied) (noting that where Plaintiffs "have no special interest different from that of the general public, they have no standing to institute or maintain a suit to enforce a public charitable trust.").

Although Section 115.001 of the Texas Trust Code specifies that "any interested person"[5] may bring an action, courts have routinely made a distinction between "public" and "private" charities when applying the term "any interested person" to charitable trusts. The terms of a public charitable trust are generally enforceable only by the trustees and the attorney general as "interested persons." *Gray*, 544 S.W.2d at 490; *see also* RR 2:133, line 24–2:134, line 3 (stating that, by virtue of the State's representation of the university, "the State of Texas'[s] position is that the University of Texas has the right to make the changes requested"). The terms of a private charitable trust are enforceable, not only by the trustee and the attorney general, but by other interested persons who "have such a special or active interest in the trust as justifies a standing to maintain an action to enforce it." *Id.*; *see also Carroll v. City of Beaumont,* 18 S.W.2d 813 (Tex. Civ. App.—Beaumont 1929, writ refused). In either instance, the Appellants here lack standing. Other than the statement regarding the purported familial relationship, Appellant David Littlefield has not demonstrated a particularized interest in this suit. CR 259. In fact, at the temporary injunction hearing, David Littlefield stated that he had "no financial interest" in Major Littlefield's will. RR 2:33, lines 10–14, 2:134, lines 11–16. There is no allegation that David Littlefield is a trustee, or a beneficiary of his

---

[5] "An 'interested person' is defined as "a trustee, beneficiary, or any other person having an interest in or a claim against the trust or any person who is affected by the administration of the trust." *Gamboa v. Gamboa*, 383 S.W.3d 263 (Tex. App.—San Antonio, 2012, no pet.).

third cousin's will, or that he is otherwise an interested person entitled to sue to enforce the trust. Accordingly, Appellants lack standing to enforce a public charitable trust.

## C. EVEN IF THIS COURT DETERMINED THE APPELLANTS HAD STANDING, PRESIDENT FENVES DID NOT VIOLATE THE TERMS OF THE LITTLEFIELD TRUST.

Even assuming, *arguendo*, that Appellants could establish standing to sue, President Fenves, in his capacity as President of the University, is acting fully in accordance with not only the law, but the terms of Major Littlefield's Last Will and Testament. The language in the will regarding the placement of the statues to be commissioned is entirely precatory and plainly gives to the trustees full discretion as to the design and placement of the statues.[6] CR 211. While Major Littlefield expressed his wish or desire as to the placement of the statues, he also expressly stated, "The arrangement given here is suggested to the committee as being the best; however, they are authorized to change it or the design suggested if they wish, giving prominence however to the statues of the men named above."[7] CR 211. And

---

[6] The expression, "it is my wish", is precatory in nature and not mandatory, and cannot be construed as mandatory, unless from reading of entire will, and by considering circumstances and situation of testator and beneficiaries, it becomes clear that intention of testator was to create such a mandatory bequest. *Najvar v. Vasek*, 564 S.W.2d 202 (Tex. Civ. App—Corpus Christi, 1978).

[7] In fact, the specific placement location that Appellants seek to preserve by their lawsuit is not the placement location Major Littlefield described in his will (which called for the statute to be placed on top of a "massive bronze arch"), but is a quite different placement that was determined solely by the trustees' exercise of their discretion to place of the statute in a place of prominence. CR 74. Appellants now seek to preserve the specific placement location that was selected by the trustees in their exercise of discretion; thus, Appellants effectively concede that the trustees indeed do have full discretion as to placement, and that the trustees were never bound literally to Major

14

Appellants do not dispute that the Dolph Briscoe Center is an appropriate and prominent location in which to indefinitely display the Davis statue.[8]

### D. TEXAS GOVERNMENT CODE § 2166.5011 IS NOT APPLICABLE TO THE PRESENT CASE.

In addition to the fatal standing issue, Appellants' claims must also fail because the provisions of the Government Code on which they rely are inapplicable to this case. The provision at issue in this case is Texas Government Code section 2166.5011, which outlines procedures for removal, relocation, or alteration of a monument or memorial. Appellants assert that the wording of Texas Government Code section 2166.501 should direct the Court's interpretation of the definition given in Texas Government Code section 2155.5011, under the doctrine of *in pari materia*. Appellants' Brief at 48. Section 2166.501, relating to monuments and memorials generally, states: "A monument or memorial for Texas heroes of the Confederate States of America or the Texas War for Independence . . . state may be erected on land owned or acquired by the state[.]" Tex. Gov't Code Ann. § 2166.501. Section 2166.5011, enacted six years after section 2166.501, more specifically defines "monuments or memorials" in the context of their "removal, relocation, or alteration." Under the doctrine of *in pari materia*, a rule of statutory

---

Littlefield's expressed desire in the will, other than that the statute be placed in a place of prominence.

[8] When asked by the trial court whether "the Briscoe Center is . . . a sufficiently prominent location for the relocation of the [Davis] statue" Appellant's counsel stated "It is a place where it needs to be . . . ." RR 2:26, lines 20–24.

construction codified by Texas Government Code section 311.026, "(a) [i]f a *general provision* [of a statute] conflicts with a special or local provision, the provisions shall be construed, if possible so that effect is given to both; (b) [i]f the conflict between the general provision and the special or local provision is irreconcilable, *the special or local provision prevails* as an exception to the general provision . . . ." Tex. Gov't Code Ann. § 311.026 (emphasis added).

As an initial matter, there is no conflict between sections 2166.501 and 2166.5011, and thus, the doctrine of *in pari materia* is not implicated. However, even if the statutes were in conflict and had to be construed such that one prevails over another, section 2166.5011, as the special provision dealing with "removal, relocation, or alteration," would prevail over section 2166.501, the more general statute.

Section 2166.5011(a) defines a "monument or memorial" as: "a permanent monument, memorial, or other designation, including a statue . . . that: (1) is located on state property; ***and*** (2) honors ***a citizen of this state*** for military or war-related service." Tex. Gov't Code Ann. § 2166.5011(a) (emphasis added). Because neither Jefferson Davis nor Woodrow Wilson were "citizens of this state," neither statue would qualify as a "monument or memorial" under the provisions of section 2166.5011(a).

### i. Jefferson Davis

Appellants incorrectly state that the Jefferson Davis statue qualifies as a monument or memorial. CR 35. Appellants rely on the accomplishments of Davis, largely focusing on Davis's contributions to the Confederacy, and the fact that he possibly owned land in Texas, in making this assertion. CR 35, RR 2:70–72. However neither Davis's contributions to the history of Texas nor Davis's status as a land owner are sufficient to make him a citizen of Texas—a requirement for a statue of Davis to qualify as a monument or memorial for the purposes of removing, relocating, or altering such a statue. Tex. Gov't Code Ann. § 2166.5011(a)(2).

The term "citizen of Texas" is not defined in Texas Government Code Chapter 2166. When a term in a statute is not defined by the Legislature, courts construe the statute's words "according to their plain and common meaning." *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004). Black's Law Dictionary defines the term "citizen" as "someone who, by either birth or naturalization, is a member of a political community, owing allegiance to the community and being entitled to enjoy all its civil rights and protections; a member of the civil state, entitled to all its privileges." *Black's Law Dictionary* (10th ed. 2014). Therefore, a "citizen of Texas" would be "someone who, by either birth or naturalization, is a member" of Texas, "owing allegiance to" Texas "and being entitled to enjoy all" of Texas's "civil rights and protections; a member of the civil

17

state, entitled to all its privileges." *Id.* Futher,

Appellants argue that "Davis was made a citizen of Texas in 1875 by purchase of 1080 acres of land in Bowie County, Texas, on which Mr. Davis paid property taxes. Since Jefferson Davis paid taxes on land in Texas, he was a citizen of Texas, as construed under the law of the time." Appellants' Brief at 51. Davis, who was born in Kentucky, and made his primary residence in Mississippi, was not made a citizen of Texas merely by paying property taxes in Texas. RR 2: 76, lines 1–2 (testimony of Egon Tausch stating "I was always very clear that his main home was in Mississippi"); *see Morris v. Gilmer*, 129 U.S. 315, 328 (1889) (discussing the requirements of citizenship, holding that "[t]here must be an actual, not pretended, change of domicile; in other words the removal must be 'a real one, *animo manendi*, and not merely ostensible.' The intention [to change domicile] and the act must concur in order to effect such a change of domicile as constitutes a change of citizenship.") (quoting *Case v. Clarke*, 5 Fed. Case 254, 5 Mason 70 (1828) (J. Story)).

There is no evidence in the record indicating that Davis ever intended to relocate his domicile to Texas. Further, the property records submitted by Appellants in the trial court specifically state that the records are the "Assessment Roll of Property in Bowie County Owned by *Non-Residents*[.]" RR 3:227. The very evidence relied upon by Appellants to make the argument that Davis was a citizen

18

plainly state that Davis was a "Non-Resident." RR 3:227. Applying this information to the definition of citizen used in the Fourteenth Amendment to the United States Constitution—that "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction are citizens of the United States and of the State *in which they reside*[]"—it is clear that Davis could not have been a citizen of Texas because, according to the very records indicating that taxes were paid on the land in Davis's name, Davis did not reside in Texas. U.S. Const. amend. XIV § 1 (emphasis added).

Appellants attempt to explain that Davis had sufficient ties to Texas such that a statue of him should be considered a monument or memorial. Appellants' Brief at 51. Under the clear language of the statute, however, because Davis was not a citizen of Texas, the statue of him on the University's campus is not a "monument or memorial" and can be removed, relocated, or altered, without consultation with the Texas Historical Commission. *See* Tex. Gov't Code Ann. § 2166.5011(a)(2).

### ii. Woodrow Wilson

Appellants also argue that the statue of Woodrow Wilson should be deemed a monument or memorial. Appellants' Brief at 50. However, for the reasons stated above in Section III(D)(i) and incorporated herein, the statue of Wilson would also not qualify as a monument or memorial under § 2166.5011(a)(2) because, like Davis, Wilson was not a citizen of Texas.[9] Again, Appellants attempt to demonstrate

---

[9] In fact, there is evidence showing Wilson's displeasure in being included in the memorial, especially expressing reluctance in being assigned the position opposite Jefferson Davis. Wilson

19

sufficient ties between Wilson and the State of Texas, mentioning that Wilson "was a man of historical significance to Texans and Texas." Appellants' Brief at 50. Being a "man of historical significance," however, is not synonymous with being a citizen of Texas. Thus, the statue of Wilson on the University's campus is not a "monument or memorial" and can be removed, relocated, or altered, without consultation with the Texas Historical Commission. *See* Tex. Gov't Code § 2166.5011(a)(2).

Moreover, even if the Wilson statue were to qualify as a monument under § 2166.5011, which it does not, the Wilson statue would be subject to the exception set forth in subsection (c) of Texas Government Code section 2166.5011, which applies when a statue is being relocated to accommodate improvements to the monument or to the surrounding property. Tex. Gov't Code Ann. § 2166.5011(c). As President Fenves stated in a letter to The University of Texas community, the statue of President Woodrow Wilson, which stands opposite the statue of Davis is being relocated "to preserve the symmetry of the Main Mall." CR 142.

---

stated "I am sorry to say I must express an unwillingness to have my effigy mounted as is suggested in association with the proposed memorial. Moreover . . . I don't fancy the partner [Davis] they offer me." Alexander Mendoza, "Causes Lost But Not Forgotten: George Washington Littlefield, Jefferson Davis, and Confederate Memories at the University of Texas at Austin," in *The Fate of Texas: The Civil War and the Lone Star State*, ed. Charles D. Grear (Fayetteville, AR: University of Arkansas Press, 2008), 169.

20

### iii. Appellants' Argument Regarding the Board of Regents Rules

Appellants assert that even if President Fenves's actions did not violate Texas Government Code sections 2166.501 and 2166.5011, his actions did violate various Board of Regents Rules. Appellants' Brief at 54–55. As an initial matter, this argument was not made at the trial court, and therefore should not be considered by the appellate court. Tex. R. App. P. 33.1; *see Whisenhunt v. Lippincott*, 416 S.W.3d 689, (Tex. App.—Texarkana 2015, no pet.) ("A party to a lawsuit waives the right to raise even a constitutional claim on appeal if that claim is not presented to the trial court.") (quoting *City of El Paso v. Heinrich*, 284 S.W.3d 366, 377 (Tex. 2009)). Further, nothing in the Appellants' argument related to the alleged violation of the Board of Regents Rules raises jurisdictional issues which could be considered by this Court for the first time on appeal. *Tex. Ass'n of Bus.*, 852 S.W.2d at 445.

However, even if this Court were to consider the Appellants' Board of Regents argument, Appellants' claims still fail. The Board of Regents Rules cited to by Appellants do not provide Appellants with any statutory standing, and their arguments for individual standing or associational standing fail under the Board of Regents Rules for the same reasons stated in part III(B) *supra*.

## PRAYER

For the foregoing reasons, this Court should affirm the judgment of the trial court below dismissing this case.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil
Litigation

ANGELA COMENERO
Division Chief


 /s/    Mariel T. Puryear
MARIEL T. PURYEAR
Attorney in Charge
Texas Bar No. 24078098
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, TX  78711-2548
PHONE: (512) 475-4651;
FAX:  (512) 320-0667
mariel.puryear@texasattorneygeneral.gov
ATTORNEYS FOR APPELLEE

# CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document has been served electronically through the electronic filing manager in accordance with Tex. R. App. P. 9.5(b)(1) on the 9th day of December 2015, to:

Kirk D. Lyons
Southern Legal Resource Center, Inc
P.O. Box 1235
Black Mountain, North Carolina 28711
828-669-5189
828-669-5191 Fax
kdl@slrc-csa.org

C.L. Ray
604 Beardsley Lane, Suite 100
Austin, Texas 78746
(512) 328-9238
(512) 857-0606 Fax
clray4523@hotmail.com

/s/   *Mariel T. Puryear*
MARIEL T. PURYEAR
Assistant Attorney General

23

# CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes.  This document also complies with the word-count limitations of Tex. R. App. P. 9.4(i), if applicable, because it contains 5,413 words, excluding any parts exempted by Tex. R. App. P. 9.4.(i)(1).

/s/  *Mariel T. Puryear*
MARIEL T. PURYEAR
Assistant Attorney General